[Civ. No. 65040. Second Dist., Div. Five. Feb. 24, 1983.]

PACIFIC COAST MEDICAL ENTERPRISES, Plaintiff and Respondent, v. DEPARTMENT OF BENEFIT PAYMENTS, Defendant and Appellant.

198

COUNSEL

George Deukmejian and John K. Van de Kamp, Attorneys General, Thomas E. Warriner, Assistant Attorney General, Anne S. Pressman and Barbara M. Motz, Deputy Attorneys General, for Defendant and Appellant.

Memel, Jacobs, Pierno & Gersh, Arthur R. Chenen, Robert V. Vallandigham, Jr., Michael G. Joerger, Martin J. Schnitzer, Marvin M. Lager, Steven G. Madison and Stephen P. Soskin for Plaintiff and Respondent.

OPINION

**FEINERMAN, P. J.**—Defendant, the Department of Benefit Payments of the State of California, predecessor to the Department of Health Services (Department), appeals from a judgment in favor of plaintiff, Pacific Coast Medical Enterprises (PCME). PCME, a provider of health care services to Medi-Cal beneficiaries, sought reimbursement from the Department for costs incurred in supplying those services. Among the costs for which PCME sought reimbursement from the Department was a reasonable return on the amount of equity capital (for goodwill and other intangible assets) it had invested in a recently purchased hospital, Community Hospital of Los Angeles (CHLA). The Department denied reimbursement for that element of claimed costs for the fiscal years ending June 30, 1970, 1971 and 1972. PCME timely appealed the audit adjustments for the 1970 and 1971 costs reports. It did not file an appeal from the audit adjustments made with respect to the 1972 costs report and it did not notify the Department of its intention to appeal regarding the 1972 costs report until about March 1975, well after the deadline for filing an appeal.

On March 1, 1977, a hearing was held concerning the 1970 and 1971 appeals before an administrative law judge (ALJ) of the Office of Administrative Hearings. The ALJ rejected PCME's valuation of the goodwill of CHLA for reimbursement purposes. The Department adopted the ALJ's proposed decision.

PCME, claiming that a petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5 was an inappropriate remedy, filed a complaint for damages and declaratory relief in the superior court. PCME sought to obtain reimbursement based on a valuation of goodwill in the amount of $4.9 million. The Department demurred to PCME's complaint on the ground that administrative mandamus was the appropriate method of review. The trial court overruled the demurrer and the parties submitted the case based on the administrative record and certain stipulations, exhibits and declarations. In effect, a trial de novo was had based on the administrative record. In its findings of fact and conclusions of law, the trial court noted that it would have reached the same result under the substantial evidence test. The Department appears to concede that said finding by the trial court renders moot any contention that the wrong vehicle was utilized to obtain a judicial resolution of the parties' dispute. We believe this concession was not in the Department's "enlightened self-interest" as will be explained hereinafter.

After its review of the administrative record, the trial court found that the consideration paid by PCME and CHLA was $7 million and that the value of goodwill was reimbursable as part of PCME's return on equity capital and was to be calculated as the excess of the total amount paid for the hospital ($7 million) over the fair market value of the tangible assets of the hospital ($2,090,000). The trial court determined that the amount of goodwill PCME was entitled to receive reimbursement on was $4.91 million. The trial court further determined that its decision was applicable to all years subsequent to the fiscal years ending June 30, 1970, and 1971, including June 30, 1972, based on the principle of res judicata and held that PCME was entitled to interest on all amounts owed by appellant based on the rates set forth in Medicare regulations.

Before we discuss the issues raised by the parties herein, we want to make it clear that we believe the trial court erred in overruling the Department's demurrer to PCME's complaint. The issue is a key one here because the standard for review on appeal in a matter of this kind is dependent upon the standard of review utilized at the trial level.

We have concluded that the appropriate vehicle for review of the Department's decision in the trial court was a petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5. Administrative mandamus is available to review a decision by an agency as the result of a proceeding in which, by law: 1. a hearing is required to be given; 2. evidence is required to be taken; and 3. discretion in the determination of facts is vested in the agency. These requirements are met with respect to the type of adjudication made by the Department in this case and as to which PCME sought review. (See Welf. & Inst. Code, § 14171; Cal. Admin. Code, tit. 22, §§ 51022-51046.)

Welfare and Institutions Code section 14171 provides for the establishment of an administrative appeal process to review grievances arising from audit findings with respect to a claim for provider costs. Subdivision (g) of that section provides, "The final decision of the director shall be reviewable in accordance with the provisions of Section 1094.5 of the Code of Civil Procedure within six months of the issuance of the director's final decision." Welfare and Institutions Code section 14171 was added in 1977 (Stats. 1977, ch. 1046, § 6, p. 3172) and became effective January 1, 1978. (Gov. Code § 9600, subd. (a).) PCME's complaint for damages, declaratory relief and permanent injunction was filed on July 25, 1978. PCME claimed in the trial court that section 14171 was not applicable to its appeal.

PCME originally appealed to the Department from the audit on its cost reports on or about January 22, 1975. In 1975, Welfare and Institutions Code section 14171 was nonexistent, as was the entire article 5.3 (§§ 14170-14177) relating to "Audit, Appeal and Recovery of Overpayments." In 1975, Welfare and Institutions Code section 14104.5 (added by Stats. 1970, ch. 1171, § 1, p. 2079) provided for the adoption of regulations covering procedures "for the review of a grievance or complaint concerning the processing or payment of money alleged by a provider of services to be payable by reason of any of the provisions of this chapter." It did not specifically relate to an appeal from the results of an audit. The section provided that if the provider was not satisfied with the Department's decision after review of his grievance or complaint, "he may not later than one year after receiving notice of such decision, present a claim for money against the state in accordance with" the provisions for claims against public entities contained in Government Code section 900 et seq. Finally, Welfare and Institutions Code section 14104.5 stated that "[t]he provisions of this section shall be the exclusive remedy available to the provider of services for moneys alleged to be payable by reason of the provisions of this chapter."

█ It was the trial court's belief that the 1977 addition to 14104.5 (Stats. 1977, ch. 1046, § 4, p. 3170), which provided, "This section shall not apply to those grievances or complaints arising from the findings of an audit or examination made by or on behalf of the Director of Benefit Payments pursuant to Sections 14102 and 14170. Article 5.3 (commencing with Section 14170) of this chapter shall govern such grievances or complaints," should not be applied retroactively in this case. The trial court erred in that regard, and that error was the basis of its erroneous decision overruling the Department's demurrer.

█ A statute which is procedural in nature may be given effect as to pending and future litigation even if the event underlying the cause of action occurred before the statute took effect. (*Olson* v. *Hickman* (1972) 25 Cal.App.3d 920,

922 [102 Cal.Rptr. 248]; *City of Sausalito* v. *County of Marin* (1970) 12 Cal.App.3d 550, 557 [90 Cal.Rptr. 843].) "A statute is procedural when it neither creates a new cause of action nor deprives defendant of any defense on the merits." (*Strauch* v. *Superior Court* (1980) 107 Cal.App.3d 45, 49 [165 Cal.Rptr. 552].) ▮ Here the change in the applicable statutes merely provided a new remedy for the enforcement of existing rights and was procedural in nature. (*Governing Board* v. *Commission on Professional Competence* (1977) 72 Cal.App.3d 447, 461 [140 Cal.Rptr. 206].)

However, even if the 1977 change in Welfare and Institutions Code section 14104.5 and the addition of article 5.3 could not be said to be procedural in nature, application of these statutory changes in this case would not run afoul of the principle of presumed nonretroactivity of a statute. (See *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371].) This is so because the statutory changes were enacted merely to conform to the long standing administrative procedure followed by the Department in the case of "provider audit appeals."

Health care providers such as doctors, dentists and skilled nursing facilities are reimbursed on a set dollar amount. (Cal. Admin. Code, tit. 22, § 51501 et seq.) Reimbursement for services based on a set dollar amount lends itself to a simplified procedure which does not necessitate a hearing and the taking of evidence at the administrative level. The procedure originally set forth in Welfare and Institutions Code section 14104.5 culminating in a claim filed against the Board of Control and, ultimately, a suit for money against the state, is a completely adequate administrative remedy in such cases.[1]

However, at the time pertinent here, reimbursement for inpatient hospital services, such as was sought by PCME, was made on the basis of reasonable costs. (Then Cal. Admin. Code, tit. 22, § 51508, see Cal. Admin. Register 79, No. 31, pp. 1300.2.14—1300.5, now see Cal. Admin. Code, tit. 22, § 51536.) To determine reasonable costs, Medicare regulations and principles were applied. (42 U.S.C. § 1395 et seq.; 42 C.F.R. § 405.401 et seq.) Calculations and reimbursement based on reasonable cost involved difficult and complex issues and audits were necessary. Controversies arising out of these proceedings should not be subject to summary in-house resolution, and accordingly, the Department developed the procedures set forth in California Administrative Code, title 22, section 51016 et seq. to cover provider audit appeals.

---

[1]An illustration of the type of grievance for which the simplified claim procedure was designed is found in *Royal Convalescent Hospital, Inc.* v. *State Board of Control* (1979) 99 Cal.App.3d 788 [160 Cal.Rptr. 458].)

As early as 1972, the department regulations provided a special procedure for such appeals. (See Cal. Admin. Register 72, No. 11, pp. 1243-1244.1, § 51016.) That procedure included a required hearing upon request of the provider before a "hearing officer designated by the Director," at which "[a]ny relevant evidence, including affidavits and hearsay evidence, may be admitted," and upon the conclusion of which the hearing officer was empowered to submit a written decision to the department containing "findings of fact, a determination of the issues presented, and an order." The procedure as set forth in this regulation was the type of procedure for which review under Code of Civil Procedure section 1094.5 is the exclusive remedy. Regulation section 51016 constituted a contemporary administrative construction of Welfare and Institutions Code section 14104.5 by the agency charged with its enforcement and as such is entitled to great weight in interpreting the code section. (*International Business Machines* v. *State Bd. of Equalization* (1980) 26 Cal.3d 923, 930-931 [163 Cal.Rptr. 782, 609 P.2d 1].)

The hearing in this matter was held before a hearing officer from the Office of Administrative Procedure in March 1977. At that time, the same audit appeal procedure existed under California Administrative Code, title 22, sections 51016-51016.25 in a slightly expanded form. (See Cal. Admin. Register 75, No. 23, pp. 1242.1-1244.)

The 1978 amendment to Welfare and Institutions Code section 14104.5 and the addition of article 5.3, including section 14171, were merely a legislative recognition of a long-standing administrative interpretation of section 14104.5 ▮ Where an amendment to a statute is remedial in nature and merely serves to clarify the existing law, the Legislature's intent that it be applied retroactively may be inferred. "The rationale of this exception is that in such an instance, in essence, no retroactive effect is given to the statute because the true meaning of the statute has always been the same. [Citation.]" (*Tyler* v. *State of California* (1982) 134 Cal.App.3d 973, 976-977 [185 Cal.Rptr. 49]; see *Coast Bank* v. *Holmes* (1971) 19 Cal.App.3d 581, 595 [97 Cal.Rptr. 30].)

▮ As we noted previously, a proceeding under Code of Civil Procedure section 1094.5 is the appropriate remedy for judicial review of all adjudicatory administrative action such as was involved in this case. An action for declaratory relief, as was attempted by PCME in this case, is inappropriate. (*State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 249 [115 Cal.Rptr. 497, 524 P.2d 1281]; *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 546 [99 Cal.Rptr. 745, 492 P.2d 1137].)

The trial judge purported to give PCME a limited trial de novo, stating that he applied "the independent review of the evidence test." We take this state-

ment to mean that the trial court, in fact, treated PCME's complaint as a petition for writ of mandate pursuant to Code of Civil Procedure section 1094.5, and applied the standard of review variously known as the "independent judgment test," "weight of the evidence test," "trial de novo," or "limited trial de novo." ■ That test is appropriate where the action of an administrative agency, other than a constitutional agency, involves or affects a fundamental vested right of a party.

It is true that the trial court stated in its conclusions of law that "had the substantial evidence test been applied, the foregoing findings would still have been reached." ■ ■■■ However, in order to determine the proper standard for our review of this matter, we must determine what standard the trial court should have applied in the first place.[2]

■ The agency's decision in this matter did not involve or substantially affect a fundamental vested right of PCME, and, hence, the standard of review which the trial court should have applied is the substantial evidence test.

■ It has been said that the determination whether action of an administrative agency affects a fundamental vested right must be made by the courts on a case-by-case basis. (*Merrill* v. *Department of Motor Vehicles, supra,* 71 Cal.2d 907, 915; *Beverly Hills Fed. S. & L. Assn.* v. *Superior Court* (1968) 259 Cal.App.2d 306, 316 [66 Cal.Rptr. 183].) However, in *Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 144-146, the Supreme Court laid down some fundamental principles to guide such a determination, as follows: "In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation. This approach finds its application in such an instance as the opportunity to continue the practice of one's trade or profession [fn. omitted]—a right which induced the court's statement in 1939: 'it necessarily follows that the court to which the application for mandate is made to secure the restoration of a professional license must exercise an independent judgment on the facts. . . .' (*Drummey* v. *State Bd. of Funeral Directors, supra,* 13 Cal.2d 75, 85 [87 P.2d 848].) . . .

---

[2]The standard for review on appeal from a proceeding under Code of Civil Procedure section 1094.5 is dependent upon the standard of review utilized at the trial level. Thus, where a trial court is authorized to exercise its independent judgment on the evidence taken as a whole, the appellate court has only to determine whether there is substantial evidence to support the trial court's findings. (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 71 [64 Cal.Rptr. 785, 435 P.2d 553]; *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20].) But if the substantial evidence test governed at trial, the appellate court must answer the same question that faced the trial court, that is whether the *agency's findings* were supported by substantial evidence. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242]; *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915 [80 Cal.Rptr. 89, 458 P.2d 33]; *Neely* v. *California State Personnel Bd.* (1965) 237 Cal.App.2d 487, 489 [47 Cal. Rptr. 64].)

"In analyzing the fundamental nature of the right asserted, this court, manifesting slighter sensitivity to the preservation of purely economic privileges, has found that the owners of Bay Bridge bonds had no fundamental vested right in preventing the construction of a second toll crossing on the San Rafael-Richmond Bridge (*Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 328-330. . .), and that a water company had no fundamental vested right to a permit to divert water from the Kern River. (*Temescal Water Co.* v. *Dep. of Public Works* (1955) 44 Cal.2d 90, 130 . . . .)

"As we have noted, in determining whether the right is sufficiently basic and fundamental to justify independent judgment review, the courts have considered the degree to which that right is 'vested,' that is, already possessed by the individual. (*McDonough* v. *Goodcell, supra,* 13 Cal.2d 741, 753 [91 P.2d 1035, 123 A.L.R. 1205].) In cases involving applications for a license, the courts have largely deferred to the administrative expertise of the agency. . . . In a case involving the agency's initial determination whether an individual qualifies to enter a profession or trade the courts uphold the agency decision unless it lacks substantial evidentiary support [fn. omitted] or infringes upon the applicant's statutory [fn. omitted] or constitutional [fn. omitted] rights. Once the agency has initially exercised its expertise and determined that an individual fulfills the requirements to practice his profession, the agency's subsequent revocation of the license calls for an independent judgment review of the facts underlying any such administrative decision." (See *Unterthiner* v. *Desert Hospital Dist.* (1982) 33 Cal.3d 285, 293-298 [188 Cal.Rptr. 590, 656 P.2d 554]; *Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 774 et seq. [163 Cal.Rptr. 619, 608 P.2d 707].)

 In the case before us the Department was dealing with PCME's application for reimbursement of provider costs. While the agency's determination cannot be said to be without economic impact, PCME had no *vested* right to reimbursement. Its application for such reimbursement was not unlike an application for any other governmental benefit, and the determination respecting PCME's eligibility for such reimbursement is the type of decision as to which courts have traditionally deferred to the administrative agency's expertise by applying the substantial evidence test on review.

Since the action of the Department taken with respect to PCME did not affect a fundamental vested right, the trial court was in error in affording PCME a limited trial de novo. However, we need not return this matter to the trial court for review under the proper standard, because, as noted, the trial court stated its findings would have been the same had it applied the substantial evidence test. However, because the substantial evidence test was the proper standard for review at the trial level, on this appeal we must determine whether

the agency's findings, not the trial court's findings, are supported by substantial evidence. (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 143; *Merrill* v. *Department of Motor Vehicles, supra,* 72 Cal.2d 907, 915.)

## BACKGROUND FACTS

On May 21, 1969, PCME entered into a plan and agreement of reorganization with Community Hospital of Los Angeles, a California Corporation which owned and operated CHLA, and the 26 shareholders of Community Hospital of Los Angeles. Under the agreement PCME was to acquire all of the issued and outstanding stock of CHLA for not less than $7 million in market value of PCME's stock.[3] The agreement provided that the value of the PCME stock was to be determined by taking the average between the bid and ask price of PCME stock on the over-the-counter market for the 10 trading days prior to the closing date of the transaction. Using this calculation, the stock was valued at $19 per share on the closing date and PCME exchanged 370,000 shares of its stock for 100 percent of CHLA's stock.[4] Approximately one year after closing, PCME liquidated the acquired corporation.

## DEPARTMENT'S DECISION

Under Medi-Cal, a state-administered program set up pursuant to federal Medicare and Medicaid programs, health care facilities which provide medical services to Medi-Cal beneficiaries (called providers), are entitled to receive reimbursement for their "reasonable costs" of providing care to Medi-Cal beneficiaries.

Among the many costs for which proprietary providers, such as PCME, may be reimbursed are: (1) an appropriate allowance for depreciation based on asset cost (42 C.F.R. § 405.415), and; (2) a reasonable return on equity capital invested and used in the provision of patient care. (42 C.F.R. § 405.429.)

---

[3]Under an auxiliary agreement entered into at the same time, Doctor Herman Kaye, a principal of PCME, agreed to immediately lend CHLA's 26 shareholders the sum of $1.25 million upon execution of the agreement in return for shareholders' pledge to Kaye of 5/7 of 25 percent of either CHLA stock or PCME stock. The agreement provided for additional loans conditioned on whether PCME filed a registration statement. The agreement provided for repayment of all such loans by shareholders upon PCME's filing such a registration statement.

[4]Shortly before oral argument on appeal in this matter, the Department filed a petition for writ of error *coram vobis* alleging that "newly discovered facts . . . establish that the price of PCME stock had been manipulated by PCME's principals since, at least, late 1968 and through 1972, . . . " and that, "[a] witness has come forward who will testify that the alleged price of $19.00 a share was not established by natural market forces, but rather was the result of carefully planned stock manipulations made under the direction of PCME's president and chairman of the board, Herman Kaye." In its petition the Department requests that we direct that the trial court judgment in this matter be vacated. In light of the result we reach on this appeal, the petition for writ of error *coram vobis* is rendered moot, and for that reason we deny it.

In its cost reports for the years 1970, 1971 and 1972, PCME took the position that it was entitled to a step-up in the basis of the assets it had acquired from CHLA (to $2,477,037) for purposes of determining the allowance for depreciation. In addition, PCME claimed that its equity capital included the cost of goodwill acquired in the purchase of CHLA, and that the goodwill should be valued at $4,410,966.

At the administrative level, the Department took the position that PCME's transaction with CHLA did not give rise to any goodwill or any increase in the cost basis for CHLA's tangible assets. The Department claimed: (1) That PCME acquired the stock of CHLA, not its assets, and that; (2) PCME's subsequent liquidation of CHLA was a transaction between related parties and that, pursuant to 42 Code of Federal Regulations section 405.427 (then 20 C.F.R. § 405.427) PCME must assume CHLA's cost basis in the tangible and intangible assets acquired.

After an extensive hearing, the administrative law judge issued his decision finding that PCME was entitled to a step-up in the basis of the assets it had acquired from CHLA. The administrative law judge also found that it was proper for PCME to include goodwill as an element in equity capital and that PCME was entitled to a reasonable return on its equity capital. The only significant issue which the administrative law judge decided in the Department's favor was the valuation of the goodwill acquired. On this issue, the administrative law judge made the following determination: "Cause exists, pursuant to 42, United States Code, Section 1395 *et seq.*; 20, Code of Federal Regulations, Section 405.401 *et seq.*; Provider Reimbursement Manual (HIM 14); Section 14000 *et seq.* of the Welfare and Institutions Code (Medi-Cal Act), and Title 22, California Administrative Code, Section 51019, to allow a reasonable return on respondent's equity capital invested in and used in the provision of patient care, including a reasonable allowance of the goodwill purchased by respondent, to be determined in accordance with the calculations established in Exhibit 14."

The calculations established in exhibit 14 were based on the net present value of superior past earnings of CHLA. Under that method of valuing goodwill, the administrative law judge set the value of the goodwill acquired in the purchase of CHLA at $486,035.

In support of its determination that goodwill should be valued according to the present value of excess earnings method, the administrative law judge found: "The record abundantly establishes that the market value for Pacific's shares were [*sic*] overstated by an amount approximating 50%. The market for Pacific's securities was illiquid and could not support a market value of $19; nor did the various guarantees which were substantially conditioned, or col-

lateral which was not high grade, add any significant support to justify an undiscounted price of $19 per share. Clearly respondent was not paying for an investment in a going business or facility, as such, but rather for the opportunity to speculate—clearly not reimbursable under the statutes or rules here. Nothing found herein should be construed to establish that the transaction involved was a sham or not bona fides."

At all times herein, PCME has taken the position that the value of goodwill should be determined by subtracting the value of the tangible assets acquired from CHLA ($2.1 million) from the purchase price ($7 million).

As noted in our prior discussion regarding scope of review, the main issue presented on this appeal is whether the administrative law judge's decision, which was adopted by the Department, respecting the proper valuation of goodwill, is supported by substantial evidence. Appellant also raises these additional issues based on the trial court's decision:

1. Whether PCME, by its failure to properly appeal the audit adjustment of its cost report for the fiscal year ending June 30, 1972, is estopped from seeking to collect on its claim for that year; and

2. Whether interest on the judgment awarded is to be computed in accordance with Medicare regulations.

## DISCUSSION

### I. *Valuation of Goodwill*

The goodwill of a business has been said to represent the expectation of continued patronage of it by the public and constitutes a form of property that may be valued. (See Bus. & Prof. Code, § 14100; *Estate of Witlin* (1978) 83 Cal.App.3d 167, 174 [147 Cal.Rptr. 723].) But, goodwill may be defined in various ways depending on the purpose for which it is being defined. (See Hogoboom, "Valuation of Goodwill of a Professional Practice in a Dissolution Proceeding," Family Law Symposium (1982) L.A. Super. Ct., p. 259.) In Webster's Third New International Dictionary (1961) at page 979, goodwill is defined as "the favor or advantage in the way of custom that a business has acquired beyond the mere value of what it sells whether due to the personality of those conducting it, the nature of its location, its reputation for skill or promptitude, or any other circumstance incidental to the business and tending to make it permanent."[5]

---

[5]Webster's Third New International Dictionary (1961) at page 979, has two more definitions of goodwill, the first favored by the Department and the second favored by PCME, as follows:

Maurice Moonitz, the Department's accounting expert, testified that goodwill is "an evaluation placed upon superior earning power of a business. . . . And superior earning power would refer to the ability it demonstrated, ability to generate a more than normal return upon an investment."

The value of goodwill is a question of fact, and any legitimate evidence of value may be introduced. (*In re Marriage of Foster* (1974) 42 Cal.App.3d 577, 583 [117 Cal.Rptr. 49].) Rather than laying down precise rules or methods to be followed to valuate goodwill, the courts have indicated that the value of goodwill must be determined based on the facts and circumstances of each individual case. (*In re Marriage of Slater* (1979) 100 Cal.App.3d 241, 245-247 [160 Cal.Rptr. 686].)

The Federal Provider Reimbursement Manual section 1214 provides: "Goodwill purchased in the acquisition prior to August, 1970, of an existing organization is includable in the provider's equity capital. The amount of goodwill is determined in accordance with generally accepted accounting principles. . . ." (CCH, Medicare and Medicaid Guide, A 5798.)[6] Also relevant is 42 Code of Federal Regulations section 405.429 (b)(3), which provides: "*Acquisitions prior to August 1970.* With respect to a facility or any tangible assets of a facility acquired before August 1970, the excess of the price paid for such facility or assets over the fair market value of tangible assets at the time of purchase is includable in equity capital *to the extent that it is reasonable. . . .*" (Italics added.)

The hallmark of all provider reimbursement on a cost basis is that the costs must be reasonable. (See former Cal. Admin. Code, tit. 22, § 51508 (Cal. Admin. Register 79, No. 31, p. 1300.2.14); 42 U.S.C. §§ 1395x(b), 1395x(v)(1)(A); 42 C.F.R. §§ 405.401(a), 405.402(c), 405.402(c)(8), 405.426(a), 405.426(b)(2), 405.429(a), 405.451(a) and 405.451(b)(1).)

A return on equity capital is an allowable cost. (42 C.F.R. § 405.429.) But, the provider bears the burden of proving that the amount claimed as equity capital, of which goodwill is an element, is a reasonable amount, just as with any other claimed item of cost.

---

"c. the capitalized value of the excess of estimated future profits of a business over the rate of return on capital considered normal in the related industry d. the excess of the purchase price of a business over and above the value assigned to its net assets exclusive of goodwill."

[6]Professor Moonitz testified that there was no real concrete definition of the term, "generally accepted accounting principles." He stated, "There is no code, no set of standards in one volume. . . ." He testified that, "generally accepted accounting principles are those for which there is substantial authoritative support," and that "This obviously leaves things open for debate in many, many cases." Professor Moonitz also testified that generally accepted accounting principles do not dictate any set definition of goodwill.

The administrative law judge, relying on expert testimony produced by the Department, rejected the value placed on the goodwill by PCME because it was not a reasonable value.

Lenny Steven Smith, senior vice president of Bateman, Eichler, Hill, Richards, and an expert on valuing securities, testified that in his opinion $19 per share "overstates substantially" the price an "average, prudent, reasonable man" would agree to pay for a 370,000-share block of PCME stock at the time in question. He based his opinion on an analysis of such factors as "price action, float, limited market, objective valuation, equivalent discount, number of shares in the block, quality of collateral guarantees, general stock market performance criteria, and the legal status of the transaction, restrictions on resale." Mr. Smith noted that there were "no substantial widely acknowledged market makers" for PCME stock at the time of the transaction. Smith testified to numerous other factors which indicated a decided lack of liquidity on the part of PCME stock. Smith also testified that "the price earnings ratio" of PCME at the time of the sale "represented a hundred ninety times earnings." This fact "would imply that the stock's value was exaggerated at the time in question." Mr. Smith concluded that based on all these factors a 30 to 50 percent discount in the $19 per share price would be appropriate and that a price of $9 to $12 per share was a reasonable value for PCME's stock at the time of the transaction.

Substantial evidence demonstrated that on one hand the stock given by PCME in exchange for CHLA stock was not really worth $7 million, and, on the other hand, that much of the purchase price in excess of $2 million was based on speculative factors. Based on this evidence, the administrative law judge determined that merely subtracting the value of CHLA's fixed assets from the purchase price would not lead to a reasonable assessment of goodwill for Medi-Cal cost reimbursement purposes. The evidence was clearly sufficient to support the administrative law judge's determination. The trial court erred in failing to so find.

## II. *1972 Claim*

As noted previously, PCME failed to file an administrative appeal with respect to the audit adjustment for 1972. It sought relief in this action for fiscal year 1972 on the theory that the court's ruling regarding the 1970 and 1971 claims would be res judicata with respect to the 1972 claim, or, in the alternative, on the theory that exhaustion of its administrative remedies would have been futile.

The trial court determined, based on the theory of res judicata, that its ruling regarding the adjustments for goodwill for the years ending June 30, 1970, and 1971 was applicable to the 1972 audit adjustment.

 Appellant contends that because PCME failed to take a timely appeal from the 1972 audit adjustment, PCME cannot now assert a claim for that year, and, therefore, the contrary decision of the trial court was erroneous. Appellant's contention is correct.

The application of the doctrine of res judicata by the trial court was inappropriate. Res judicata precludes relitigation of issues in a case when the same issue has already been litigated and finally decided in a prior case involving the same parties. (*Henn* v. *Henn* (1980) 26 Cal.3d 323, 329-330 [161 Cal.Rptr. 502, 605 P.2d 10].) Res judicata is merely a defense. It is not jurisdictional, and, as such, it may be waived if not properly raised by pleading or evidence. (*Busick* v. *Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 977 [104 Cal.Rptr. 42, 500 P.2d 1386]; *Wolfsen* v. *Hathaway* (1948) 32 Cal.2d 632, 638 [198 P.2d 1], overruled on a point not pertinent here in *Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 497 [15 Cal.Rptr. 87, 364 P.2d 263].)

 It is now generally recognized that res judicata applies in administrative proceedings to decisions of an administrative agency made pursuant to its judicial function. (*Hollywood Circle, Inc.* v. *Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 732-733 [13 Cal.Rptr. 104, 361 P.2d 712].) It follows that since res judicata may be raised in administrative proceedings, it may also be waived if not properly asserted.

In the present case PCME waived its right to assert res judicata. PCME did not keep its 1972 claim alive by making the proper appeals. If it had done so, and if an action had been pending as to its 1972 claim at the same time that the present action was pending, res judicata might have been applicable under the law as stated in *Haines* v. *Pigott* (1959) 174 Cal.App.2d 805, 807 [345 P.2d 339] and *Bennett* v. *Forrest* (1944) 24 Cal.2d 485, 493 [150 P.2d 416].[7] However, the present appeal concerns only the years 1970 and 1971. When PCME failed to appeal the 1972 audit adjustment that decision became final. The 1972 claim cannot now be brought back to life by asserting res judicata.

 In an attempt to "sanitize" its claim, respondent also argues that exhaustion of its administrative remedies would have been futile and therefore its failure to properly appeal the 1972 audit adjustment should be excused. Respondent cites *Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830 [112 Cal.Rptr. 761], and *Eldridge* v. *City of Palo Alto* (1976) 57 Cal.App.3d

---

[7]In *Haines* v. *Pigott, supra,* at page 807, the court stated: "Where two actions involving the same issue are pending at the same time, it is the first final judgment, even though it may be rendered in the second suit filed, that renders the issue res judicata in the other court. . . . In such a case, the first final judgment may be brought to the attention of the court in which an appeal is still pending and relied upon as res judicata."

613 [129 Cal.Rptr. 575] (disapproved on other grounds in *Agins* v. *Tiburon* (1979) 24 Cal.3d 266, 273 [157 Cal.Rptr. 372, 598 P.2d 25]) to support its contention that the futility exception applies in this case. However, in the present case respondent did not fail to file an administrative appeal because to do so would have been futile; rather, as it admits, it failed to do so through inadvertence. Moreover, PCME did not then proceed to timely file suit in the trial court. The 1972 audit adjustment was issued in January 1974, and the present suit was not filed until on or about July 25, 1978. Code of Civil Procedure section 338, subdivision 1 requires that "[a]n action upon a liability created by statute" be brought within three years. The four-year statute of limitations in Code of Civil Procedure section 337 had also expired by the time this action was instituted. Therefore, even if respondent was entitled to avoid exhaustion of its administrative remedies and proceed directly to the trial court, it did not do so within the applicable statute of limitations and its claim is barred for that reason.

### III. *Calculation of Interest*

As previously noted, the trial court ordered the Department to calculate interest on reimbursement due to be computed in accordance with "Medicare rules and regulations for the periods in question."

PCME maintains that the trial court's decision was correct and that section 51536 of title 22 of the California Administrative Code incorporates by reference all of the Medicare regulations contained in 42 Code of Federal Regulations, part 405, including section 405.454(k)(1), (2) and (3) governing interest.

California Administrative Code, title 22, section 51536 provides in part: "(a) Reimbursement *for hospital inpatient services* provided to Medi-Cal program beneficiaries shall be the lesser of the following for each hospital:

"(1) Customary charges.

"(2) *Allowable costs determined in accordance with applicable Medicare Standards and principles of reimbursement.*

"(3) All-inclusive rate per discharge.

"(b) The following definitions are applicable to this section:

"..................................

"(4) Allowable costs means the hospital's allowable Medi-Cal cost permitted by applicable Medicare standards and principles of reimbursement, 45 CFR Part 405 and HIM-15." (Italics added.)

Though the Department concedes that interest is payable, it disputes the trial court's decision that Medicare principles should govern the computation. Rather, it contends that the calculation of interest is governed by California law. Appellant's contention is correct.

Title 22, section 51536 of the California Administrative Code governs the determination of the reimbursable costs of providing medical services to patients and authorizes the use of applicable Medicare standards to determine those costs. However, the section does *not* incorporate *all* sections of 42 Code of Federal Regulations, part 405, as respondent suggests, nor does it encompass interest awarded on judgments. Section 51536 limits the use of Medicare standards to those Medicare sections which deal with the reimbursable costs of providing medical services. Prejudgment interest is not a cost relating to the provisions of medical services which may be reimbursed. California did not incorporate the Medicare regulations governing interest payments into its law, and therefore interest is to be calculated in accordance with California law, and not the federal Medicare rules and regulations.

Although provision was made for the payment of interest by providers on overpayments made to them (Welf. & Inst. Code, § 14172), and for the payment of interest by the Department on erroneously collected overpayments (Cal. Admin. Code, tit. 22, § 51047), there is no mention in either title 22 of the California Administrative Code or in the Welfare and Institutions Code of payment of interest on administrative judgments rendered in cases involving disputes over the amount owed as reimbursement to a provider of Medi-Cal services. Article XV, section 1 of the California Constitution provides that the Legislature may set the rate for postjudgment interest at a maximum of 10 percent per annum, and that if the Legislature does not set the rate, then it shall be 7 percent per annum. It appears that the Legislature has not enacted a statute governing the interest rate in a case of this type. Therefore, interest should be calculated at the rate of 7 percent, in accordance with the California Constitution.

The judgment is reversed, and the matter is remanded for further proceedings not inconsistent with this opinion.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied March 23, 1983, and respondent's petition for a hearing by the Supreme Court was denied May 19, 1983. Kaus, J., did not participate therein.