Filed 1/29/14

*CERTIFIED FOR PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| I_<br>BING CROSBY, as Special Administrator, etc.,<br><br>       Plaintiff and Respondent,<br><br>       v.<br><br>HLC PROPERTIES, LTD., et al.,<br><br>       Defendants and Appellants. | B242089<br><br>(Los Angeles County<br>Super. Ct. No. P334700) |


APPEAL from a judgment of the Superior Court of Los Angeles County, Michael I. Levanas, Judge.  Reversed.

Greines, Martin, Stein & Richland, Kent L. Richland, Cynthia E. Tobisman and Feris M. Greenberger for Defendants and Appellants.

Sullivan, Workman & Dee, Henry K. Workman and Charles D. Cummings for Plaintiff and Respondent.

HLC Properties, Limited (HLC) and Kathryn Crosby (Kathryn) appeal the trial court's order granting the Estate of Wilma Wyatt Crosby's (Wilma's Estate) petition[1] and holding that Wilma Crosby (Wilma) possessed a community property interest in her former husband's right of publicity. HLC and Kathryn argue that (1) the Wilma Wyatt Crosby Trust's (Wilma's Trust) prior settlement of Wilma's community property claims bars this petition, and (2) the right of publicity is not community property. We agree with the first point asserted by HLC and Kathryn argument,[2] and therefore, reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

Harris Lillis Crosby, professionally known as Bing Crosby (Bing), was a popular 20th century entertainer. He married Wilma on September 29, 1930, and they had four sons together.[3] Wilma died on November 1, 1952, and her will provided that her community property be distributed in trust to her sons.

Bing remarried, and remained married to his second wife, Kathryn, until he died on October 14, 1977. His will did not provide for Wilma and left the residue of his estate to a marital trust for the benefit of Kathryn. After Bing's death, appellant HLC

---

[1]    The petition was filed under Probate Code section 850 which provides that a trustee may file "a petition requesting that the court make an order" "[w]here the trustee has a claim to real or personal property, title to or possession of which is held by another." (Prob. Code, § 850, subd. (a)(3)(B).)

[2]    As a result, we have no need to decide the issue raised by the second point. (See fn. 10, post.

[3]    Wilma was an actress professionally known as Dixie Lee.

was formed for the purpose of managing Bing's interests, including his right of publicity.[4]

On September 18, 1996, Wilma's Trust sued HLC and Kathryn for declaratory relief as to the trust's entitlement to "interest, dividends, royalties and other income derived from the community property of [Bing] and [Wilma] . . . ."[5] In 1999, the parties settled for approximately $1.5 million. The settlement agreement provided, in part, that it was "in complete and final settlement of all claims from any source whatsoever of royalties, income or monies due [Wilma's Trust] and all beneficiaries of the Trust, arising from property interests acquired by [Wilma], as a result of her marriage to Bing Crosby, through the date of this Agreement."

The settlement agreement specified each source of income due Wilma's Trust and provided that "there are no other royalties/income due or payable to the Trust . . . with respect to Bing Crosby in any medium." However, the agreement also provided that, "[s]hould other income derived from works or performances of Bing Crosby during [the marriage with Wilma] be discovered in the future, . . . . [t]he Trust

---

[4]    Under the common law of California, there exists a "right of publicity" in a person's name, likeness and identity. (*Lugosi v. Universal Pictures* (1979) 25 Cal.3d 813, 819.) In 1971, the Legislature has also created a statutory right of publicity in a person's "name, voice, signature, photograph, or likeness." (Civil Code, § 3344.) In addition, after the California Supreme Court held that the right of publicity was not descendible in *Lugosi v. Universal Pictures*, the Legislature, in 1984, superseded the holding through the passage of Civil Code section 3344.1.

[5]    The Trust also asserted causes of action for breach of oral and implied in fact contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, fraud and deceit, negligence, conversion, constructive trust, an accounting, money had and received, and unjust enrichment.

3

is entitled to its share . . . . " The agreement did not specifically address Bing's right of publicity.

In addition, the agreement contained a release of all claims which provided that the settling parties, "hereby compromise, release, acquit and forever discharge one another . . . from all manner of actions, suits, liens, indebtedness, damages, claims, judgments, obligations and demands of every nature, kind or description whatsoever, whether known or unknown and whether suspected or unsuspected, which [Wilma's Trust] has or hereinafter, can, shall or may have against [HLC and Kathryn] directly or indirectly based upon or arising out of any act, duty, agreement, omission, transaction, event, occurrence, or any other matter whatsoever, whether now known or unknown, which occurred prior to the date of this Agreement. Each party is aware of and expressly waives, to the full extent permitted by the law, the benefits of California Civil Code § 1542, which provides as follows: 'A general release does not extend to claims which the creditor does not known or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.' " Wilma's Trust thereafter dismissed the action *with prejudice*.

On June 14, 2005, the trustee for Wilma's Trust wrote counsel for HLC stating that "[a]ll revenue resulting from the right to publicity of Bing Crosby should be shared with the beneficiaries of [the Trust]" because the right is "the community property of

4

Bing [] and Wilma."[6] On January 1, 2008, the Legislature amended Civil Code section 3344.1 (section 3344.1), subdivision (p), the statute which provides that a deceased celebrity's right of publicity is descendible, to state that "[t]he rights recognized by this section are expressly made retroactive, including to those deceased personalities who died before January 1, 1985." On June 23, 2010, Wilma's Estate filed the present petition for an order stating that Wilma possessed a community property interest in Bing's right to publicity, and that Wilma's share of this interest passed to her heirs pursuant to the terms of her will. HLC and Kathryn opposed the petition on the grounds that (1) the 1999 settlement agreement barred it, and (2) the right of publicity is not community property.

The trial court granted the petition and entered an order holding that Wilma's Estate had "a community property interest in Bing['s] right of publicity [that Wilma] acquired during their marriage and that this community property interest passed by her testamentary dispositions" to her heirs on the grounds that: (1) the 1999 settlement agreement did not bar the petition because the 2008 amendment to section 3344.1, "created a right that did not exist before by including deceased personalities who died before January 1, 1985 among those entitled to exercise the right of publicity;" (2) res judicata did not apply because the "petition presented here d[id] not come close to raising the same claims or issues described in the 1996 [] Complaint" which "sought monetary damages for monies wrongfully withheld by HLC"; and (3) section 3344.1 "makes no mention of the community property aspects of the right of publicity, much

---

[6]     The record indicates that HLC did not respond to this letter.

5

less any mention that the right of publicity is separate property, or purports to be an exception to the general rule of Family Code section 760" that "there is a community interest unless otherwise specified." HLC and Kathryn timely appealed.

## *CONTENTIONS*

HLC and Kathryn argue that (1) the 1999 settlement agreement released Wilma's Estate's claims to Bing's right of publicity, (2) the 2008 amendment to section 3344.1 did not create a new right of publicity in Bing's estate, and (3) the right of publicity is not community property.

## *DISCUSSION*

### 1. *Standard of Review*

The application of the doctrine of res judicata and the interpretation of the contract at issue here present questions of law that we review de novo. (*State Farm General Ins. Co. v. Workers' Comp. Appeals Bd.* (2013) 218 Cal.App.4th 258, 268 at fn. 4; *Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263, 273 ["We interpret a contract de novo if the interpretation does not turn on the credibility of extrinsic evidence . . . . [Citations.]"]) In addition, "[q]uestions of statutory construction, and consideration of the legislative history of the amendments, raise issues of law which we review de novo." (*P.S. v. San Bernardino City Unified School Dist.* (2009) 174 Cal.App.4th 953, 959.)

### 2. *The Release of Claims in the 1999 Settlement Agreement*

HLC and Kathryn contend that Wilma's Estate's petition was barred by res judicata on the grounds that the 1996 lawsuit determined what forms of community

6

property to which Wilma was entitled. Wilma's Estate argues that its petition is a claim for "equitable relief" as distinguished from the 1996 complaint which was based on "HLC's alleged mishandling of Wilma's share of income, royalties and similar returns from the works and performances of Bing."

"Res judicata precludes relitigation of issues in a case when the same issue has already been litigated and finally decided in a prior case involving the same parties. [Citation.]" (*Pacific Coast Medical Enterprises v. Department of Benefit Payments* (1983) 140 Cal.App.3d 197, 214.) The aspect of res judicata known as claim preclusion precludes parties or their privies from litigating the same cause of action that has been finally determined by a court. (*Alpha Mechanical, Heating & Air Conditioning, Inc. v. Travelers Casualty & Surety Co. of America* (2005) 133 Cal.App.4th 1319, 1326.) "Two proceedings are on the same cause of action if they are based on the same 'primary right.' [Citation.] The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based. [Citation.] . . . [¶] An injury is defined in part by reference to the set of facts, or transaction, from which the injury arose." (*Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1202.)

Here, the 1996 lawsuit sought a declaration that Wilma's Trust was entitled to income derived from Bing and Wilma's community property in an attempt to hold HLC and Kathryn liable for Wilma's share of all forms of community property owned by her and Bing. Wilma's Estate does not dispute that it is in privity with Wilma's Trust. The present action also sought a declaration that Wilma's Estate was entitled to income

7

derived from Bing and Wilma's community property but specifically as to Bing's right to publicity. Accordingly, the current petition again sought to hold HLC and Kathryn liable for Wilma's share of community property, and the primary right involved in both proceedings is the same: the asserted right to Wilma's share of the community property owned by her and Bing. On these grounds, res judicata principles preclude Wilma's Estate from re-litigating its claims to Wilma's share of community property.

Furthermore, Wilma's Estate expressly released its claims to any additional sources of community property, known or unknown, at the time of Wilma's Trust's settlement: the settlement agreement purported to be a "complete and final settlement of all claims," "release[d] [HLC and Kathryn] . . . from all manner of actions . . . whether known or unknown . . . which [Wilma's Estate] has or hereinafter, can, shall, or may have against [HLC and Kathryn] directly or indirectly based upon . . . any other matter whatsoever . . . which occurred prior to the date of this Agreement," and "expressly waive[d] the benefits of California Civil Code § 1542."

Wilma's Estate argues that the settlement agreement created an exception to its general release of all claims "should other income derived from works or performances of Bing Crosby during [the marriage with Wilma] be discovered in the future," and that this exception authorizes Wilma's Estate to now claim a share of Bing's right of publicity because it only discovered this income after the settlement. However, the right of publicity involves the right of a person to profit derived from the use of his "name, voice, signature, photograph, or likeness," as distinguished from income derived from a "work or performance." (Civil Code, § 3344, subd. (a).)

8

Moreover, this exception must be read narrowly in light of the agreement's broad release of all conceivable claims. The exception only includes income "*discovered* in the future," and, thus, necessarily only applies to income that the parties were not aware of at the time the contract was signed. However, the right of publicity was not such an undiscovered asset generating income unbeknownst to the parties; nor does it constitute undiscovered income that existed at the time of the 1999 settlement agreement. Wilma's Estate's urged that its interpretation of the exception would allow the parties to bring future claims for any additional source of income that they belatedly discovered. To interpret the exception to apply to assets that, due to the parties' oversight, were not included in the contract, would vitiate the express provisions of the release. (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1507 ["when interpreting a contract, we strive to interpret the parties' agreement to give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable."])

Wilma's Estate also argues that res judicata and its prior release of claims do not impact its current petition because, at the time of the 1996 action, there was no right of publicity in Bing's estate. (See *Allied Fire Protection v. Diede Construction, Inc.* (2005) 127 Cal.App.4th 150, 156 ["where it cannot be said that plaintiff knew or should have known of the claim when the first action was filed, res judicata should not bar the second action."]) Such a right, according to Wilma's Estate, was only created when the 2008 amendment to section 3344.1 was signed into law. This argument, as we now explain, has no merit.

9

3.    *Civil Code Section 3344.1*

Section 3344.1 addresses a celebrity's right to transfer his right of publicity,

including by testamentary instrument.  HLC and Kathryn contend that, as originally

enacted in 1985, section 3344.1 applied to Bing's estate, and that therefore, Wilma's

Estate released its claim to this right by not asserting it in the 1996 lawsuit and by not

excepting it from the release in the 1999 settlement of that action.  Wilma's Estate

argues that the trial court correctly concluded that the statute did not apply retroactively

to Bing's estate until the 2008 amendment was passed.  Accordingly, Wilma's Estate

argues that it did not release its claim to Bing's right of publicity in the 1999 settlement

because the claim did not exist at that time.  In response, HLC and Kathryn argue that

the 2008 amendment merely clarified that the statute applied to celebrities who had died

prior to its enactment, and did not create any new rights.

Prior to its 2008 amendment, section 3344.1 protected a "deceased personality's"

right to control the commercial usage of his "name, voice, signature, photograph, or

likeness," and defined a "deceased personality" as "any such natural person who has

died within 70 years prior to January 1, 1985."  The statute further provided that the

right of publicity was freely transferable "by means of trust or testamentary

documents," and could also pass by intestacy. [7]

---

[7]    Prior to its 2008 amendment, section 3344.1 provided that:
"(a)(1) Any person who uses a deceased personality's name, voice, signature, photograph, or likeness, in any manner [for commercial purposes] . . . without prior consent from the person or persons specified in subdivision (c), shall be liable for any damages sustained . . . .

In May 2007, federal district courts in California and New York, both addressing the commercial usage of the image of Marilyn Monroe, held that section 3344.1 did not authorize celebrities who died before the statute's enactment to transfer their right of publicity by will. (See the summary judgment orders entered in *The Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc., United States District Court, Central District of California*, Case No. CV 05–02200 MMM (MCx), filed May 14, 2007 (*Milton Greene*) and in *Shaw Family Archives Ltd. v. CMG Worldwide, Inc., United States District Court, Southern District of New York*, Case No. 05 Civ. 3939 (CM), dated May 2, 2007 (*CMG Worldwide*).) These courts reasoned that a celebrity could not devise a *subsequently* created right of publicity by will because the individual did not own that right at the time of death. (*Ibid.*)

---

"(b) The rights recognized under this section are property rights, freely transferable, in whole or in part, by contract or by means of trust or testamentary documents, whether the transfer occurs before the death of the deceased personality, by the deceased personality or his or her transferees, or, after the death of the deceased personality, by the person or persons in whom the rights vest under this section or the transferees of that person or persons.

"(c) The consent required by this section shall be exercisable by the person or persons to whom the right of consent, or portion thereof, has been transferred in accordance with subdivision (b), or if no transfer has occurred, then by the person or persons to whom the right of consent, or portion thereof, has passed in accordance with subdivision (d).

"(d) Subject to subdivisions (b) and (c), after the death of any person, the rights under this section shall belong to the following person or persons and may be exercised, on behalf of and for the benefit of all of those persons, by those persons who, in the aggregate, are entitled to more than a one-half interest in the rights: [¶] (1) The entire interest in those rights belong to the surviving spouse of the deceased personality unless there are any surviving children or grandchildren of the deceased personality, in which case one-half of the entire interest in those rights belong to the surviving spouse. . . . [¶] . . .

"(h) . . . *A 'deceased personality' shall include, without limitation, any such natural person who has died within 70 years prior to January 1, 1985.*" (Italics added.)

11

These courts further concluded that, as to those celebrities who died before section 3344.1's enactment, the statute vests the posthumous right of publicity in their designated heirs. (*Milton Greene* at p. 36 ["the court concludes that the statute vests the posthumous right of publicity that it created directly in the statutorily designated heirs rather than in the residuary beneficiaries under a predeceased personality's will"]; *CMG Worldwide* at pp. 17-18 ["any rights bestowed by § 3344.1 on a personality already deceased at the time of its enactment could not be transferred by will . . . . It would vest instead in the persons provided for by statute."])

The following month, California State Senator Sheila Kuehl introduced a bill (SB 771) to abrogate both district courts' rulings and clarify the meaning of section 3344.1. (See 2007 Cal. Stat. ch. 439 (SB 771), sec. 2 ["It is the intent of the Legislature to abrogate the summary judgment orders entered in *The Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc., United States District Court, Central District of California*, Case No. CV 05–02200 MMM (MCx), filed May 14, 2007, and in *Shaw Family Archives Ltd. v. CMG Worldwide, Inc., United States District Court, Southern District of New York*, Case No. 05 CIV. 3939(CM), dated May 2, 2007."]; Senate Judiciary Summary at p. 399 (["The author states this bill is necessary to clarify the Legislature's intent, when it enacted Civil Code § 3344.1 . . . . "])

SB 771 was signed by Governor Arnold Schwarzenegger less than five months later. The bill revised the statute's provision regarding the transfer of the right of publicity by contract or testamentary instrument, explicitly providing that this provision applied to instruments "executed *before* or after January 1, 1985," and that such rights

12

"shall be deemed to have existed at the time of death of any deceased personality who died prior to January 1, 1985." (See 2007 Cal. Stat. ch. 439 (SB 771) (Emphasis added.)) The bill further provided that "[t]he rights recognized by this section are *expressly* made retroactive, including to those deceased personalities who died before January 1, 1985."[8] (*Ibid.*)

4.  *Section 3344.1, As Originally Enacted, Applied to Celebrities Who Died Prior to January 1, 1985*

The parties dispute whether the 2008 amendment modified the law, thereby creating a new right, or merely clarified it to emphasize the Legislature's original intent. The trial court concluded that, prior to the 2008 amendment, section 3344.1 did not allow celebrities who died before its enactment to "exercise the right of publicity." The trial court reached this conclusion based solely on the 2008 amendment's provision that it was "retroactive" and without analyzing the pre-2008 version of the statute. In fact, prior to the 2008 amendment, section 3344.1 provided that it applied to "any such

---

[8]    The amendment also included a provision intended to thwart litigation by individuals who had previously interpreted section 3344.1 to only vest the right of publicity belonging to predeceased celebrities in statutorily designated heirs: "Notwithstanding any provision of this section to the contrary, if any action was taken prior to May 1, 2007, to exercise rights recognized under this section relating to a deceased personality who died prior to January 1, 1985 by a person described in subdivision (d), other than a person who was disinherited by the deceased personality in a testamentary instrument, and the exercise of those rights was not challenged successfully in a court action by a person described in subdivision (b), that exercise shall not be affected by subdivision (b). In that a case, the rights that would otherwise vest in one or more persons described in subdivision (b) shall vest solely in the person or persons described in subdivision (d) other than a person disinherited by the deceased personality in a testamentary instrument, for all future purposes."

13

natural person who has died within 70 years prior to January 1, 1985." [9] Even the California and New York federal district courts, which held that the Legislature could not have intended to authorize celebrities who died before the enactment of the statute to transfer a subsequently created right, concluded that, as to those celebrities, the right still vested in their heirs. By contrast, here, the trial court appears to have ignored the statute's application to "any such person who died within 70 years prior to January 1, 1985."

The provision of section 3344.1 and its legislative history show that the 2008 amendment did not create a new right in predeceased celebrities to transfer the right of publicity by will, but only clarified the statute's original intent. "The fundamental task of statutory construction is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute.' [Citation.]" (*People v. Cruz* (1996) 13 Cal.4th 764, 774-775.) However, even if the plain meaning of a statute is clear, a court may still inquire whether the "literal meaning of [the ] statute comports with its purpose." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 729.)

Consideration of the circumstances surrounding the amendment of a statute "can indicate that the Legislature made material changes in statutory language in an effort only to clarify a statute's true meaning." (*Western Security Bank v. Superior Court*

---

[9] The original version of the statute provided that "a 'deceased personality' shall include, without limitation, any such natural person who has died within 50 years prior to January 1, 1985." This fifty-year period was extended to 70 years on January 1, 2000. (Stats. 1999, ch. 1000 (SB 284).)

14

(1997) 15 Cal.4th 232, 243.) "One such circumstance is when the Legislature promptly reacts to the emergence of a novel question of statutory interpretation: ' "An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act, where the amendment was adopted soon after the controversy arose concerning the proper interpretation of the statute. . . . " [Citation.]' [Citation.]" (*Ibid.*) "Even so, a legislative declaration of an existing statute's meaning is neither binding nor conclusive in construing the statute. Ultimately, the interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts. [Citations.]" (*Id.* at p. 244.)

The plain language of section 3344.1 indicates that it always applied to celebrities who had died prior to the enactment of the statute: it always recognized a "deceased personality's" right to control the commercial usage of his "name, voice, signature, photograph, or likeness," and defined a "deceased personality" as any person who died within 50 or 70 years prior to January 1, 1985. Although the amendment added a provision that "expressly" made the rights "recognized by this section" retroactive to "includ[e] [] those deceased personalities who died before January 1, 1985," the plain meaning of this phrase read in light of the entire statute (including the statute's stated application to celebrities who died prior to 1985), could only be interpreted to mean that such rights were previously *implicitly* "retroactive." In addition, the original version of the statute provided that the right of publicity was "freely transferable . . . by contract or by means of trust or testamentary

15

documents . . . . ” without distinguishing between celebrities who had died within 70 years prior to 1985 or afterwards.

In addition, the Legislature explicitly stated that it was *clarifying* section 3344.1 by the 2008 amendment. The legislative history provides that the purpose of the amendment was not to "change[] existing law, but, rather . . . [to] clarif[y] it in order to prevent needless litigation." (Analysis of SB 771 by Office of Senate Floor Analyses, Senate Rules Committee (prepared for Sept. 7, 2007 Senate floor vote) at p. 5.) Moreover, the bill's sponsor stated that "[t]here is nothing in the statute that indicates the Legislature intended to treat people differently depending on whether they died before or after 1985." (Senate Judiciary Committee Bill Analysis at p. 4; see *Kern v. County of Imperial* (1990) 226 Cal.App.3d 391, 401 ["The statements of the sponsor of legislation are entitled to be considered in determining the import of the legislation."]) The bill was also passed swiftly after the federal district courts' opinions holding that section 3344.1 was not retroactive with respect to the transfer of the right of publicity by will, and clearly appears to have been in direct response to those opinions. Since we conclude that SB 771 only clarified existing law, the amendment did not create any new rights that fell outside of the 1999 settlement's release of all claims to community property, the argument of Wilma's Estate that Bing's right of publicity did not exist in 1999 and thus could not have been the subject the settlement agreement must fail. The petition of Wilma's Estate is clearly barred by res judicata.[10]

_____

[10]    Because we find that res judicata bars this petition and Wilma's Estate released any claims it had to a community property share of Bing's right of publicity, we need

16

*DISPOSITION*

The judgment is reversed.  HLC and Kathryn shall recover their costs of appeal.

*CERTIFIED FOR PUBLICATION*

                                                                        CROSKEY, J.

WE CONCUR:

        KLEIN, P. J.

        ALDRICH, J.

---

not reach the argument that the right of publicity is not community property.  However, we note that section 3344.1 appears to treat the right of publicity as separate property, and therefore, appears to create an exception anticipated by Probate Code's section 760's provision that all property acquired during marriage is community property "except as otherwise provided by statute."  Section 3344.1 provides that the right of publicity may be transferred in a manner that is contrary to how community property may be transferred:  (1) section 3344.1, subdivision (d), by which a surviving spouse will receive one-half of the rights of the deceased celebrity and the celebrity's surviving children will receive the other half, appears to conflict with the intestate provision of Probate Code section 6401(a), which provides that a surviving spouse receives *all* community property in intestacy; and (2) section 3344.1's provision that the right of publicity is "freely transferable" by the celebrity conflicts with Family Code section 1100, subdivision (b), protecting a spouse from non-consensual gifts of community property by the other spouse.  (Cal. Community Property Law (2013 ed.) § 3.24.)

17