Filed 9/12/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TIMED OUT, LLC, | B242820 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC114914) |
| v. | |
| YOUABIAN, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Norman P. Tarle, Judge. Reversed.

Law Offices of Hall & Lim, Timothy A. Hall, Ani Aghajani; Conkle Kremer & Engel and Eric S. Engel for Plaintiff and Appellant.

Bonne, Bridge, Mueller, O'Keefe & Nichols, Raymond J. McMahon and Kevin J. Grochow for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiff Timed Out, LLC (Plaintiff), as the assignee of two models who are not parties to this action (the Models), sued defendants Youabian, Inc. and Kambiz Youabian (Defendants) for common law and statutory misappropriation of likeness based on Defendants' alleged unauthorized display of the Models' images in connection with advertising Defendants' cosmetic medical services. The trial court ruled a cause of action for misappropriation of likeness is not assignable and granted Defendants' motion for judgment on the pleadings on that basis. We conclude a misappropriation of likeness claim, which concerns only the pecuniary benefits to be derived from the commercial exploitation of a person's likeness, is assignable. Accordingly, we reverse.

## FACTS[1] AND PROCEDURAL BACKGROUND

According to the complaint's allegations, Plaintiff is a company that "specialize[s] in the protection of personal image rights." The Models are professional models, who earn a living modeling and selling their images to companies for advertising products and services. In or about July 2011, the Models discovered Defendants had been using their images on Defendants' website, without the Models' consent, to advertise Defendants' cosmetic medical services. Following the discovery, the Models "assigned their rights to bring suit for misappropriation of their images to PLAINTIFF."

---

[1] Because this matter comes to us after a judgment on the pleadings, we take the facts from Plaintiff's complaint, the allegations of which are deemed true for the limited purpose of determining whether Plaintiff has stated a viable cause of action. (See *Stevenson v. Superior Court* (1977) 16 Cal.4th 880, 885; *Lori Rubinstein Physical Therapy, Inc. v. PTPN, Inc.* (2007) 148 Cal.App.4th 1130, 1133, fn. 1.)

Based on the foregoing allegations, Plaintiff sued Defendants for statutory and common law misappropriation of likeness.  The complaint alleges that, as a direct and proximate result of the misappropriation, Plaintiff, through its assignment from the Models, suffered damages "with respect to [the Models'] right to control the commercial exploitation of their image and likeness [*sic*]" and through the dilution of the value of the Models' images for advertising medical services.

Defendants moved for judgment on the pleadings.  In their motion, Defendants principally asserted that Plaintiff lacked standing to sue on behalf of the Models because the right of publicity, which creates liability for misappropriation of a person's name or likeness, is personal in nature and cannot be assigned.  Defendants also argued Plaintiff's claims were preempted by the federal Copyright Act.

After hearing argument and taking the matter under submission, the trial court granted Defendant's motion.  In its written ruling, the court observed the parties' primary dispute centered on whether a claim for misappropriation of likeness can be assigned. The court framed the issue as follows:  "The parties agree that, under California law, assignment of a 'personal' tort is not valid. . . .  The issue, therefore, is whether a cause of action for misappropriation of publicity is personal in nature."  Citing *Lugosi v. Universal Pictures* (1979) 25 Cal.3d 813 (*Lugosi*), the trial court concluded "the right to publicity [is] personal in nature and therefore non-assignable."  On this basis, the court granted the motion and entered judgment for Defendants.

## STANDARD OF REVIEW

" 'Review of a judgment on the pleadings requires the appellate court to determine, de novo and as a matter of law, whether the complaint states a cause of action.' "  (*Third Eye Blind, Inc. v. Near North Entertainment Ins. Services, LLC* (2005) 127 Cal.App.4th 1311, 1317.)  "We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and facts of which judicial notice can be taken.  [Citation.]  We construe the pleading in a reasonable manner and read the allegations in context."  (*Zenith Ins. Co. v. O'Connor*

3

(2007) 148 Cal.App.4th 998, 1006.) The complaint "must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.)

## DISCUSSION

1. *The Pecuniary Interest Protected by the Right of Privacy Is Assignable*

"In this state the right of publicity is both a statutory and a common law right." (*Comedy III Productions, Inc. v. Gary Saderup, Inc*. (2001) 25 Cal.4th 387, 391 (*Comedy III*).) Although its origin can be traced to "the fourth type of privacy invasion identified by Dean Prosser in his seminal article on the subject"[2] (*id.* at p. 391, fn. 2, citing Prosser, Privacy (1960) 48 Cal. L.Rev. 383, 389), "[t]he right of publicity has come to be recognized as distinct from the right of privacy." (*KNB Enterprises v. Matthews* (2000) 78 Cal.App.4th 362, 366 (*KNB*).) "What may have originated as a concern for the right to be left alone has become a tool to control the commercial use and, thus, protect the economic value of one's name, voice, signature, photograph, or likeness." (*Ibid.*) "What the right of publicity holder possesses is . . . a right to prevent others from misappropriating the economic value generated . . . through the merchandising of the 'name, voice, signature, photograph, or likeness' of the [holder]." (*Comedy III, supra,* 25 Cal.4th at p. 403; Civ. Code § 3344, subd. (a).)

In 1971, California enacted Civil Code section 3344,[3] a commercial statute that complements the common law tort of misappropriation of likeness. (*Lugosi, supra,*

---

[2] " 'The law of privacy comprises four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff . . . "to be let alone." Without any attempt to exact definition, these four torts may be described as follows: [¶] 1. Intrusion upon the plaintiff's seclusion or solitude or into his private affairs. [¶] 2. Public disclosure of embarrassing private facts about the plaintiff. [¶] 3. Publicity which places the plaintiff in a false light in the public eye. [¶] 4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.' " (*Lugosi, supra,* 25 Cal.3d at p. 819, quoting Prosser Privacy, *supra*, 48 Cal. L.Rev. at p. 389, italics omitted.) The common law right of publicity derives from "the fourth type of privacy invasion." (*Comedy III, supra,* 25 Cal.4th at p. 391, fn. 2, citing Prosser Privacy, at p. 389.)

[3] Statutory references are to the Civil Code unless otherwise stated.

4

25 Cal.3d at p. 819, fn. 6; *KNB, supra,* 78 Cal.App.4th at pp. 366-367.)  Section 3344, subdivision (a) provides in relevant part:  "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof."  Nothing in section 3344 expressly prohibits assignment of the rights and remedies established by the statute.

In the instant case, the trial court granted Defendants' motion on the ground that the right of publicity is "personal in nature and therefore non-assignable."  In reaching this conclusion, the trial court derived a rule from our Supreme Court's opinion in *Lugosi v. Universal Pictures, supra,* 25 Cal.3d 813 that cannot properly be attributed to the holding in that case.

In *Lugosi*, the heirs of the actor Bela Lugosi sued Universal Pictures, the motion picture company that produced the film *Dracula*, for common law misappropriation of Lugosi's likeness.  In contracting to star in the film's title role, Lugosi assigned Universal the right to use his name and likeness to advertise the movie.[4]  After his death, Lugosi's heirs sued Universal for the profits it made licensing " 'the use of the Count Dracula character to commercial firms' " for merchandising products other than the film. (*Lugosi, supra,* 25 Cal.3d at pp. 816-817.)  The trial court ruled in favor of the heirs,

---

[4]  The assignment clause in Lugosi's contract provided:  " 'The producer shall have the right to photograph and/or otherwise produce, reproduce, transmit, exhibit, distribute, and *exploit in connection with* the said photoplay any and all of the artist's acts, poses, plays and appearances of any and all kinds hereunder, and *shall further have the right to record, reproduce, transmit, exhibit, distribute, and exploit in connection with* said photoplay the artist's voice, and all instrumental, musical, and other sound effects produced by the artist in connection with such acts, poses, plays and appearances. The producer shall likewise have the right to use and give publicity to the *artist's name and likeness*, photographic or otherwise, and to recordations and reproductions of the artist's voice and all instrumental, musical and other sound effects produced by the artist hereunder, *in connection with* the advertising and exploitation of said photoplay.' " (*Lugosi, supra,* 25 Cal.3d at p. 816, fn. 2.)

finding "Lugosi during his lifetime had a protectable property or proprietary right in his facial characteristics and the individual manner of his likeness and appearance as Count Dracula," and this right did not terminate with Lugosi's death but "descended to his heirs." (*Id.* at p. 817.)

As framed by the trial court's ruling, the issue on appeal in *Lugosi* was whether the right of publicity survives a celebrity's death, as a descendible property interest, if never exercised or exploited by the celebrity during his or her lifetime. (See *Lugosi, supra,* 25 Cal.3d at pp. 817-819.) While answering this question in the negative, our Supreme Court recognized—contrary to the trial court's ruling in the instant case—that the right of publicity *can be assigned by the celebrity* during his or her lifetime. (See *id.* at p. 823.)

In addressing a collection of federal cases that concluded the right of publicity passes to one's heirs, the *Lugosi* court affirmed the premise of those cases—that "the right to exploit name and likeness *can be assigned*"—but explained why assignability alone does not automatically translate into inheritability of the right. (*Lugosi, supra,* 25 Cal.3d at p. 823, italics added.) The court explained, "<u>Assignment of the right to exploit name and likeness by the 'owner' thereof is synonymous with its exercise.</u> In all of the [federal] cases *the owner* of the right did assign it in his lifetime and, too, <u>Lugosi did precisely this in his lifetime when he assigned his name and likeness to Universal</u> for exploitation in connection with the picture *Dracula*. [Citation.] Assertion by the heirs of the right to exploit their predecessor's name and likeness to commercial situations he left unexploited simply is *not* the exercise of that right by *the person* entitled to it." (*Ibid.*, underscoring added.) Because "the right to exploit name and likeness is personal to the artist and must be exercised, if at all, by him during his lifetime," the Supreme Court concluded Lugosi's heirs lacked standing to assert their claim. (*Id.* at p. 824.)

Though the Supreme Court expressly acknowledged that the right of publicity can be assigned by the owner during his or her lifetime, the trial court in the instant case appears to have been confused by the references to a "personal" right in the *Lugosi* opinion. Starting from the premise that "assignment of a 'personal' tort is not valid," the trial court reasoned that because *Lugosi* "found the right was purely personal in nature" it could not be assigned. The trial court's conclusion reads too much into the "personal" right label in *Lugosi*. When the *Lugosi* court identified the right of publicity as a personal in nature, it did so to explain why only *the owner* of the right had the authority to assign or otherwise exercise it. (See *Lugosi, supra,* 25 Cal.3d at p. 823 ["Assignment of the right to exploit name and likeness *by the 'owner' thereof* is synonymous with its exercise" (italics added)].) In other words, the personal nature of the right restricts *who* can assign it—not whether the right of publicity can be assigned. Acknowledging that the right is personal to its owner led the *Lugosi* court to logically conclude that, if Lugosi did not assign or exercise the right during his life, then his heirs had no standing to exercise it after his death. (*Id.* at p. 824.)

Ultimately the Legislature changed the law by enacting section 3344.1. The statute provides that the rights to control "a deceased personality's name, voice, signature, photograph, or likeness" (§ 3344.1, subd. (a)(1)), are "property rights" that are "deemed to have existed at the time of death . . . [which] vest in the persons entitled to these property rights under the testamentary instrument of the deceased personality effective as of the date of his or her death." (§ 3344.1, subd. (b).) While this change has no bearing on the instant case—as the Models allegedly made an inter vivos assignment to Plaintiff—section 3344.1 is nevertheless notable because it acknowledges, as the Supreme Court did in *Lugosi*, that the right of publicity can be assigned by the owner during his or her lifetime. Section 3344.1, subdivision (b) states in relevant part: ". . . Nothing in this section shall be construed to render invalid or unenforceable any contract entered into by a deceased personality *during his or her lifetime* by which the deceased personality *assigned the rights*, in whole or in part, to use his or her name,

voice, signature, photograph, or likeness . . . ."[5]  (Italics added.)  That is precisely what Plaintiff alleges happened here.  The trial court erred in holding the right of publicity cannot be assigned.[6]

2.	*A Cause of Action for Misappropriation of Likeness Is Assignable*

Having concluded the right of publicity is assignable, we now turn to Defendants' contention that the trial court's ruling should nevertheless be affirmed, because Plaintiff was assigned only "the naked right to bring suit for misappropriation of the [M]odels' images, and received no other rights or duties along with the assignment."  Defendants argue "the right to sue alone, without anything more, is not assignable" and "an assignment of the naked right to sue generally does not give a plaintiff standing to bring claims."  The applicable law does not support Defendants' contention.

Section 954 provides:  "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner."  A "thing in action" is defined as "a right to recover money or other personal property by a judicial proceeding."  (§ 953.)  Sections 953 and 954 state a "broad rule of assignability . . . underlying which is the basic public policy that ' "[a]ssignability of things in action is

---

[5]	Because sections 3344 and 3344.1 are not ambiguous with respect to the assignability of the right of publicity during one's lifetime, we do not consider the legislative history cited by Defendants.  (See *Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000 [In determining legislative intent, "we look first to the words of the statute, giving the language its usual, ordinary meaning.  If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs."].)

[6]	The federal district court in *Upper Deck Authenticated LTD. v. CPG Direct* (S.D.Cal. 1997) 971 F.Supp. 1337 (*Upper Deck*) made a similar error, albeit without even citing our Supreme Court's controlling opinion in *Lugosi*.  Without analyzing California law, and relying on a Florida district court case, the district court in *Upper Deck* dismissed a misappropriation of likeness claim, based on an inter vivos assignment, on the stated ground that "the right of publicity appears to attach only to actual persons." (*Upper Deck*, at pp. 1348-1349, citing *National Football League v. Alley, Inc.* (S.D.Fla. 1983) 624 F.Supp. 6, 10.)  As we have explained, under California law, the personal nature of the right of publicity restricts *who* can assign it—not whether the right can be assigned.  (See *Lugosi, supra,* 25 Cal.3d at p. 824.)

8

now the rule; nonassignability the exception" ' [citations]. ' "[A]nd this exception is confined to wrongs done to the person, the reputation, of the feelings of the injured party, and to contracts of a purely personal nature, like promises of marriage." ' [Citation.] Thus, causes of action for personal injuries arising out of a tort are not assignable nor are those founded upon wrongs of a purely personal nature such as to the reputation or the feelings of the one injured. Assignable are choses in action arising out of an obligation or breach of contract as are those arising out of the violation of a right of property [citation] or a wrong involving injury to personal or real property." (*Goodley v. Wank & Wank, Inc.* (1976) 62 Cal.App.3d 389, 393-394 (*Goodley*), fns. omitted; see also *White Mountains Reinsurance Co. of America v. Borton Petrini, LLP* (2013) 221 Cal.App.4th 890, 895-896.)

Defendants rely on *Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937 (*Murphy*) and *Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252 (*Essex*) to argue a cause of action for misappropriation of likeness comes within the exception for wrongs done to the person. Based on these authorities, Defendants contend a misappropriation of likeness cause of action is not assignable, absent some "indication that other rights or duties have been assigned." We disagree. Though *Murphy* and *Essex* may state the general rule that "a purely personal tort cause of action is not assignable in California" (*Murphy,* at p. 942; *Essex,* at p. 1263), those cases actually support the conclusion in this case that Plaintiff's purely *pecuniary* misappropriation claims are assignable.

*Murphy* addressed the assignability of an insurance bad faith cause of action, arising from the insurer's failure to settle a personal injury claim. (*Murphy, supra,* 17 Cal.3d at pp. 939-942.) Our Supreme Court concluded the bad faith cause of action was assignable, although the personal tort aspects—emotional distress and punitive damages—were not. (*Id.* at p. 942.) When the Supreme Court revisited the issue in *Essex*, it reaffirmed the bad faith action in *Murphy* was a " 'hybrid cause of action,' one comprised of both assignable and nonassignable components." (*Essex, supra,* 38 Cal.4th at p. 1261.) The court explained, "We start from the proposition that assignability is the rule. (§ 954.) From that general rule we except those tort causes of actions ' " 'founded

9

upon wrongs of a purely personal nature.' " ' [Citation.] Actions for bad faith against an insurer have generally been held to be assignable [citation], including claims for breach of the duty to defend [citation]. Although some damages potentially recoverable in a bad faith action, including damages for emotional distress and punitive damages, are not assignable (*Murphy, supra,* 17 Cal.3d at p. 942), the cause of action itself remains freely assignable as to all other damages (*id.* at p. 946)." (*Essex,* at p. 1263.)

As we explained above, though the right of publicity is described as "personal" in nature, this simply means that the owner of the right has exclusive authority to assign it during his or her lifetime. (See *Lugosi, supra,* 25 Cal.3d at p. 824.) More to the point, unlike the other interests grouped under the privacy rubric (see fn. 2, *ante*), the right of publicity distinctly protects an "economic interest." (*Comedy III, supra,* 25 Cal.4th at p. 405; see also *Crosby v. HLC Properties, Ltd.* (2014) 223 Cal.App.4th 597, 604 ["the right of publicity involves the right of a person to profit derived from the use of his 'name, voice, signature, photograph, or likeness' "]; *Aroa Marketing, Inc. v. Hartford Ins. Co. of Midwest* (2011) 198 Cal.App.4th 781, 789.)

Here, Plaintiff did not sue for injury to the feelings, emotional distress or personal injuries to the Models. On the contrary, Plaintiff seeks to recover only pecuniary damages for Defendants' alleged commercial misappropriation of the Models' images. Those damages are described in the complaint as the "profits or gross revenues" Defendants received as a result of the unauthorized use of the Models' images, the usurpation of the Models' rights to commercially exploit their images, and the dilution of the commercial value of the Models' likenesses. The complaint does not allege emotional distress or disturbance to the Models' peace of mind, nor does Plaintiff seek damages for hurt feelings or injury to the Models' reputation. Because the claims involve purely pecuniary interests, the broad rule of assignability of things in action applies.[7] (See § 954; *Goodley, supra,* 62 Cal.App.3d at p. 393.)

---

[7]     Defendant also advocates a more general prohibition against any "naked" assignment of a cause of action, arguing that "[i]n many other related areas of law, the right to sue alone, without anything more, is not assignable." Such a rule would be

10

In the alternative, Defendants argue, even if a misappropriation of likeness claim can be assigned, an "exclusive license" is required to assert the claim. Because Plaintiff "only possesses a right to sue for particular violations"—i.e., Defendants' alleged display of the Models' images on Defendants' website—Defendants contend "[Plaintiff] has not received enough of the right to create standing." We disagree.

On this record, the complaint's allegations are sufficient to support a reasonable inference that Plaintiff received exclusive assignments with respect to the Models' likenesses. To begin, even if Plaintiff received only "a right to sue" to exclude Defendants from exploiting the Models' images, that right alone suggests Plaintiff obtained an exclusive right; albeit one limited perhaps to the particular display of the Models' images on Defendants' website. Be that as it may, the fact that an assignment is limited to a particular display does not mean it is ineffective to impart standing to sue for misappropriation within the limited scope of the assignment. For instance, the assignment to Universal in *Lugosi* was limited to exploiting Lugosi's likeness in connection with promoting the film *Dracula*. (See *Lugosi, supra,* 25 Cal.3d at p. 816,

_____

inconsistent with section 954's broad rule of assignability of things in action. Moreover, the cases Defendant cites, most of which were decided under federal intellectual property law, are plainly inapposite. (See, e.g., *Crown Co. v. Nye Tool Works* (1923) 261 U.S. 24, 40 (*Crown Co.*) [federal patent statute restricts assignment of infringement claim]; *Silvers v. Sony Pictures Entertainment, Inc.* (9th Cir. 2005) 402 F.3d 881, 885 [copyright infringement]; *National Licensing v. Inland Joseph Fruit* (E.D.Wash. 2004) 361 F.Supp.2d 1244, 1256 [trademark infringement].) As the United States Supreme Court explained in *Crown Die*, the common law preference for assignment of things in action does not apply to a patent infringement action because "[p]atent property is the creature of statute law and its incidents are equally so and depend upon the construction to be given to the statutes creating it and them . . . . It is not safe, therefore, in dealing with a transfer of rights under the patent law, to follow implicitly the rules governing a transfer of rights in a chose in action at common law." (*Crown Die,* at p. 40.) As for the prohibition against assigning a "naked" cause of action for fraud, our Supreme Court has held that a fraud claim is assignable where any form of property was obtained by means of fraud. (See *Jackson v. Deauville Holding Co.* (1933) 219 Cal. 498, 501-502.) Plaintiff's action to assert the Models' pecuniary interests in the dissemination of their likenesses comes squarely within the broad rule of assignability of things in action. (See § 954; *Goodley, supra,* 62 Cal.App.3d at p. 393.)

11

fn. 2.)  The Supreme Court nevertheless recognized the validity of that assignment, without ever implying a condition that the assignment must cover Lugosi's entire right of publicity to be enforced.  The same is true of the other cases cited by Defendants—all involved a limited license to exploit the celebrity's likeness in connection with a particular commercial opportunity, but none questioned whether a limited license was enforceable.  (See, e.g., *Haelan Laboratories v. Topps Chewing Gum, Inc*. (2d Cir. 1953) 202 F.2d 866, 867 [ballplayer licensed plaintiff exclusive right to use ballplayer's photograph in connection with selling plaintiff's gum for a stated term]; *Cepeda v. Swift and Company* (8th Cir. 1969) 415 F.2d 1205, 1207 [ballplayer granted equipment manufacturer " 'exclusive world right and license to manufacture, advertise and sell baseballs, baseball shoes, baseball gloves and baseball mitts identified by his name, facsimile signature, initials, portrait, or by any nickname popularly applied to him' "].)  So too, the Legislature has acknowledged the enforceability of a limited assignment.  As noted above, section 3344.1, subdivision (b) recognizes a "contract entered into by a deceased personality during his or her lifetime by which the deceased personality assigned the rights, in whole *or in part*, to use his or her name, voice, signature, photograph, or likeness" is enforceable.  (Italics added.)

In any event, the complaint's allegations also are sufficient to reasonably infer that the assignment encompassed not just the right to sue, but also the underlying pecuniary interest in exploiting the Models' likenesses.  For instance, the complaint alleges Plaintiff, "through its assignment from [the Models]," has been damaged "with respect to [the Models'] right to control the commercial exploitation of their image and likeness [*sic*]."  The complaint also alleges "the value of [the Models'] image and likeness [*sic*] has been diluted due to [Defendants'] unauthorized use . . . to advertise [Defendants'] medical services," resulting in injury to Plaintiff through the assignment.  These allegations support a reasonable inference that the assignment encompasses the pecuniary interest in controlling the display of the Models' images in connection with advertising medical services.  Liberally construing the complaint as we must, with all reasonable inference drawn in favor of the pleadings, we conclude these allegations are sufficient to

12

establish Plaintiff's standing to assert the claims for common law and statutory misappropriation of likeness by right of assignment.

> 3. *Plaintiff's Claims Are Not Preempted by Federal Copyright Law*

Lastly, we address Defendants' contention that Plaintiff's state law misappropriation of likeness claims are preempted by federal copyright law. Defendants argue Plaintiff's action seeks to prevent the display of copyrightable photographs and, therefore, the claims are preempted. We disagree.

To establish preemption under the Copyright Act (17 U.S.C. § 301), two conditions must be met: " 'first, the subject of the claim must be a work fixed in a tangible medium of expression and come within the subject matter or scope of copyright protection as described in sections 102 and 103 of 17 United States Code, and second, the right asserted under state law must be equivalent to the exclusive rights contained in section 106. [Citations.]' " (*KNB, supra,* 78 Cal.App.4th at p. 369; *Downing v. Abercrombie & Fitch* (9th Cir. 2001) 265 F.3d 994, 1003 (*Downing*).) Plaintiff's claims in the instant case do not satisfy either condition.

To be sure, the photographs displayed on Defendants' website, as pictorial works of authorship, are protected by the Copyright Act. However, it is not the publication of the photographs themselves that is the basis for Plaintiff's claims. Rather, it is Defendants' use of the Models' likenesses pictured in the photographs to promote Defendants' business that constitutes the alleged misappropriation. As the Nimmer treatise on copyright law states: "The 'work' that is the subject of the right of publicity is the *persona, i.e.,* the name and likeness of a celebrity or other individual. A *persona* can hardly be said to constitute a 'writing' of an 'author' within the meaning of the Copyright Clause of the Constitution. *A fortiori*, it is not a 'work of authorship' under the Act. Such name and likeness do not become a work of authorship simply because they are embodied in a copyrightable work such as a photograph." (1 Nimmer on Copyright (2013) § 1.01 [B][1][c], fns. omitted; *KNB, supra,* 78 Cal.App.4th at p. 374; *Downing, supra,* 265 F.3d at pp. 1003-1004.)

Returning to the two-part test for preemption, we conclude (1) the subjects of Plaintiff's claims—the Models' likenesses—are not copyrightable, even though embodied in a copyrightable work such as a photograph; and (2) the right asserted under state law—the right of publicity—does not fall within the subject matter of copyright.[8] (1 Nimmer, *supra,* § 1.01 [B][1][c]; *KNB, supra,* 78 Cal.App.4th at p. 374.)  Plaintiffs' state law misappropriation of likeness claims are not preempted by federal copyright law.

---

[8]     The court in *KNB* rejected a substantively identical preemption argument on the same basis.  In doing so, the *KNB* court distinguished *Fleet v. CBS, Inc.* (1996) 50 Cal.App.4th 1911—one of the principal cases Defendants rely upon.  As the *KNB* court observed, the court in *Fleet* found the misappropriation claim was preempted "where the only misappropriation alleged was the film's authorized distribution by the exclusive distributor, CBS." (*KNB, supra,* 78 Cal.App.4th at p. 364; see *Fleet,* at p. 1914.)  Thus, the *KNB* court explained, "*Fleet* stands for the solid proposition that performers in a copyrighted film may not use their statutory right of publicity to prevent the *exclusive* copyright holder from distributing the film." (*KNB,* at p. 372.)  That rule, however, did not apply in *KNB* because the plaintiff was not "asserting a right of publicity claim against the exclusive copyright holder in an effort to halt the authorized distribution of their photographs." (*Ibid.*)  So too here, there is no allegation that Defendants hold the copyright to the subject photographs.  We agree with the *KNB* court that *Fleet* does not apply where, as here, "the defendant has no legal right to publish the copyrighted work." (*KNB,* at p. 374.)

**DISPOSITION**

The judgment is reversed and the order granting Defendants' motion for judgment on the pleadings is vacated. Plaintiff Timed Out, LLC is awarded costs on appeal.

**CERTIFIED FOR PUBLICATION**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.