Filed 12/21/15  Timed Out, LLC v. Bra Smyth of California, Inc. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| TIMED OUT, LLC,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>BRA SMYTH OF CALIFORNIA, INC.,<br><br>    Defendant and Respondent. | H039601<br>(Santa Clara County<br>Super. Ct. No. CV206350) |

Between 2001 and 2003, model Kristen Taekman posed for photographs wearing merchandise sold by respondent Bra Smyth of California, Inc. (Bra Smyth), a retailer of women's intimate apparel.  In 2011, Taekman discovered that her photographs were still being used in Bra Smyth's print catalogue.  Believing that she had only consented to use of her images for a year, Taekman contacted appellant Timed Out, LLC (Timed Out).  Timed Out is a company that assists models who believe their images are being used without their permission.  On behalf of Taekman, Timed Out asked Bra Smyth to cease using Taekman's images.  Bra Smyth did not comply with this request.  Eventually, Taekman assigned Timed Out her right to sue and recover damages from Bra Smyth's alleged misappropriation of her likeness.  Subsequently, Timed Out filed a lawsuit against Bra Smyth, alleging causes of action for statutory and common law misappropriation of likeness and unjust enrichment.

On appeal, Timed Out argues the trial court erred when it denied Timed Out's pretrial motion in limine to exclude evidence pertaining to an oral agreement between

Taekman's modeling agency, Next Model Management (Next), and Bra Smyth. Timed Out claimed that evidence of this oral agreement was irrelevant, because the agreement violated the statute of frauds (Civ. Code, § 1624). For the reasons set forth below, we find that the trial court did not err in making this ruling and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

From 2001 and 2003, Taekman worked as a model in New York and participated in several photography shoots for Bra Smyth, a clothing company that sells women's intimate wear. At the time of the photography shoots, Taekman was represented by Next. Taekman asserted that Bra Smyth was given the rights to use her images for one year. Negotiations with Bra Smyth were done through her agency, Next, and Taekman said that Next had the authority to conduct negotiations on her behalf.

Bra Smyth produces a catalogue and also has a Web site where it sells its products. In 2011, Taekman discovered that Bra Smyth was still using her images in its print catalogue. Taekman contacted Timed Out, a company that specializes in assisting models who believe their images are being used without their permission. Timed Out discovered that Bra Smyth was also using images of Taekman on its Web site.

Taekman assigned Timed Out her rights arising out of claims against Bra Smyth for misappropriating her likeness. Timed Out contacted Bra Smyth and requested that the company stop using Taekman's images. Bra Smyth refused to comply with Timed Out's demands.

On August 1, 2011, Timed Out filed a complaint against Bra Smyth, alleging causes of action for statutory misappropriation of likeness (Civ. Code, § 3344), common law misappropriation of likeness, and unjust enrichment.

During discovery, Timed Out deposed Rebecca Simon, one of the principals of Bra Smyth.[1] During her deposition, Rebecca stated that she believed that the company had unlimited usage of Taekman's photographs. Rebecca asserted that she had never personally negotiated with Taekman, and the agreement she had with Next was verbal.

Subsequently, Timed Out filed a pretrial motion in limine seeking to exclude all evidence of the oral agreement between Next and Bra Smyth. Timed Out argued that evidence of the oral agreement would be irrelevant, because the agreement would be unenforceable under the statute of frauds (Civ. Code, § 1624) since it could not have been performed within a year of its making. Therefore, Timed Out claimed that the probative value of the evidence would be greatly outweighed by its prejudicial impact. The court denied the motion, finding that the evidence would be more probative than prejudicial under Evidence Code section 352.

The matter proceeded to trial. Rebecca testified and, in a departure from her deposition testimony, stated that Bra Smyth did not have unlimited usage rights for Taekman's images. Instead, Rebecca claimed that she had agreed with the agent at Next that Bra Smyth could use Taekman's images for as long as the company sold the product being modeled. Diana, the other principal of Bra Smyth, also testified to this effect. Diana also asserted that Bra Smyth was not privy to the conversations between the model and the model's agent. Further, the models work for the agency. Diana said that Bra Smyth would negotiate with the agency's booker and settle on a specified rate for a day's work. Bra Smyth would pay Next, and Next would pay the model.

Taekman confirmed that Next negotiated the agreements for modeling jobs on her behalf. Taekman stated that Next would confirm the details of a potential job with her,

---

[1] Rebecca Simon and Diana Simon are the principals of Bra Smyth. Since Rebecca and Diana share the same surname, we will refer to them by their first names for clarity.

including its usage terms, before she was booked. Taekman said that the usage rights attached to a standard day rate job was one year. Taekman conceded that Bra Smyth appropriately used her images by displaying them in the company's catalogue; however, she believed the company had exceeded their usage rights.

Next was not a party to the underlying litigation. No representative or agent from Next testified during the underlying proceedings.

Following the trial, the jury found that Bra Smyth had Taekman's consent to use her images. Judgment was entered in favor of Bra Smyth on all of Timed Out's causes of action, and Timed Out appealed.

## DISCUSSION

On appeal, Timed Out claims that the trial court erred when it denied its pretrial motion in limine seeking to exclude evidence of the oral agreement between Next and Bra Smyth regarding the use of Taekman's images. Timed Out insists that because the agreement cannot be completed within a year, it violates the statute of frauds. Therefore, Timed Out believes the evidence is irrelevant and subject to exclusion.

However, we conclude that the arguments advanced by Timed Out are without merit. First, we find that even if the statute of frauds is relevant to the causes of action advanced by Timed Out, it is inapplicable since the agreement could have feasibly been completed within a year. Second, we conclude that whether or not the oral agreement violates the statute of frauds is beside the point. The statute of frauds dictates that certain contracts, if not reduced in written form, are unenforceable. However, Timed Out did not bring a cause of action seeking to enforce a contract. And, there is no requirement in the statutory or common law causes of action of misappropriation of likeness that a plaintiff's consent must be shown by the existence of a valid, enforceable contract.

Based on the foregoing, the trial court did not err when it denied the motion in limine. Evidence of the oral agreement was highly probative of whether Taekman consented to Bra Smyth's use of her likeness.

1. *The Motion in Limine*

   a. **Standard of Review**

Before we address the merits of Timed Out's claims, we first discuss the appropriate standard of review to apply. Timed Out asserts that we should review de novo whether the statute of frauds applies to bar enforcement of the oral agreement between Next and Bra Smyth since there is no factual dispute and the issue is a matter of law. (See *Lombardo v. Santa Monica Young Men's Christian Assn.* (1985) 169 Cal.App.3d 529, 539 (*Lombardo*).)

Bra Smyth disagrees, arguing that the evidence underlying the statute of frauds claim is disputed. Therefore, Bra Smyth insists that the matter should be reviewed for substantial evidence, because the parties submitted evidence to the jury regarding the general practice of Next and Bra Smyth's negotiations regarding the use of a model's images.

We conclude that both parties are correct to a certain extent. Timed Out is correct that if a pure issue of law is raised and we are evaluating the application of law to undisputed facts, we would employ a de novo standard of review. Therefore, when reviewing whether, as a matter of law, the statute of frauds applies to bar enforcement of a contract, we would review the matter de novo. However, as Bra Smyth rightly deduces, if there *is* a disputed fact, the factual finding made by the trial court will be reviewed for substantial evidence. Therefore, if we are reviewing whether there was sufficient evidence of Taekman's consent or lack of consent, we would review the finding for substantial evidence.

5

However, Timed Out does not raise arguments concerning the sufficiency of the evidence that Taekman lacked consent. Rather, Timed Out challenges the trial court's discretionary decision not to exclude evidence that it believed was more probative than it was prejudicial under Evidence Code section 352. It is well-settled that we review a trial court's ruling on the admissibility of evidence for abuse of discretion. (*People ex rel. Lockyer v. Sun Pacific Farming Co*. (2000) 77 Cal.App.4th 619.) Therefore, we employ an abuse of discretion standard of review when evaluating the trial court's evidentiary ruling. To the extent this decision rests on whether the statute of frauds applies, we apply a de novo standard of review since the argument concerns a matter of law.

b. **The Statute of Frauds is Inapplicable**

First, we find that Timed Out's claims fail because the statute of frauds does not apply to the oral agreement at issue here.

Civil Code section 1624 codifies the statute of frauds and provides in pertinent part: "(a) The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: [¶] (1) An agreement that by its terms is not to be performed within a year from the making thereof." In short, the statute of frauds renders certain contracts invalid and unenforceable unless they are memorialized in writing. Pertinent here, Timed Out argues that the statute of frauds applies to bar enforcement of the oral agreement between Next and Bra Smyth regarding the use of Taekman's images.

In part, Timed Out relies on *Aero Bolt & Screw Co. v. Iaia* (1960) 180 Cal.App.2d 728. In *Aero Bolt*, the court noted that " 'if the terms of the license are not susceptible of performance within one year after the license is granted,' " the license is susceptible to the statute of frauds. (*Id*. at p. 740.) Timed Out claims that the terms of the license— unlimited use, as asserted by Rebecca during her deposition, or use for as long as the

6

company sold the product, as asserted by Rebecca and Diana during trial—cannot be performed within a year.

Timed Out also relies on *Tostevin v. Douglas* (1958) 160 Cal.App.2d 321 (*Tostevin*). In *Tostevin*, the plaintiff filed an action for declaratory relief and accounting, alleging that he had entered into an oral agreement with the defendants to work on a travel television show for a salary of $50 a week that the defendants had repudiated and refused to abide by. (*Id*. at p. 324.) After the plaintiff filed a third amended complaint, the trial court granted the defendant's motion to strike and entered a judgment of dismissal. (*Ibid*.)

*Tostevin* concluded that the plaintiff had failed to state a cause of action, because the agreement at issue was invalid under the statute of frauds. (*Tostevin*, *supra*, 160 Cal.App.2d at p. 328.) The agreement was for services in connection with the travel television series to be produced and contained no definite time period for the plaintiff's performance. The court concluded that "[s]ince it [was] clear from the pleadings that payment was to continue so long as the program was broadcast throughout the world, the parties must have contemplated that the continued performance of the contract was to last more than one year from the date of making, as indeed it did." (*Ibid*.)

In coming to this conclusion, *Tostevin* relied on an early California Supreme Court case, *Swift v. Swift* (1873) 46 Cal. 266, 268, for the rule that a contract is invalid under the statute of frauds if "it is evident from the subject matter of the contract that the parties had in contemplation a longer period than one year as the time for its performance." However, a review of case law suggests that this earlier rule, as articulated in *Swift* and relied on in *Tostevin*, may no longer be well-founded.

Contrary to the conclusion set forth in *Tostevin*, the language of Civil Code section 1624, subdivision (a)(1) indicates that it is the *express terms* of the alleged agreement that renders it within the statute of frauds, not the party's subjective intentions

7

at the time they enter into the contract.  Civil Code section 1624, subdivision (a)(1), states that the statute of frauds bars enforcement of an agreement "that *by its terms* is not to be performed within a year from the making thereof."  (Italics added.)  The focus is thus not on the minds of the contracting parties.  Rather, the focus is on the terms of the agreement itself.  And, if there is any possibility that the agreement can be completed within a year, the agreement does not fall within the statute of frauds.

In more recent cases our Supreme Court has employed a narrower interpretation of the statute of frauds, interpreting the statute of frauds as only invalidating those agreements that cannot feasibly be performed within a year.  Decided almost a decade after *Tostevin*, our Supreme Court reached its decision in *White Lighting Co. v. Wolfson* (1968) 68 Cal.2d 336 (*White Lighting*).  In *White Lighting*, the plaintiff alleged that it had entered into an oral agreement with the defendant to employ the defendant for an indefinite period.  (*Id*. at p. 341.)  *White Lighting* concluded that since the alleged oral agreement *could* be terminated at will by either party, it could, by its own terms, be performed within one year.  (*Id*. at p. 344.)

The rationale set forth in *White Lighting* was followed again by our Supreme Court in *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654 (*Foley*).  In *Foley*, the plaintiff alleged that over the course of his seven-year employment with the defendant, the company's conduct and policies gave rise to an oral contract not to terminate his employment without good cause.  (*Id*. at p. 671.)  In a footnote, *Foley* noted that the subjective intent of the parties could be relevant to whether the statute of frauds applies to a given contract.  (*Id*. at p. 675, fn. 18.)  However, in reaching its decision, the *Foley* court concentrated not on the intent of the parties but on the terms of the contract itself. The *Foley* court held that "[b]ecause the employee can quit or the employer can discharge for cause, even an agreement that strictly defines appropriate grounds for discharge can

8

be completely performed within one year—or within one day for that matter." (*Id*. at p. 673.)

*Foley* further asserted: "The Legislature, which in 1872 enacted Civil Code section 1624, was aware of precedent limiting the reach of the one-year provision of the statute of frauds. The Code Commissioners' notes specifically advised that 'in a similar statute in New York these words have been construed as applying only to contracts which cannot *possibly* be executed within a year, *under any contingency*. . . . To bring a contract within the statute relating to parol agreements, not to be performed within one year, it must appear to be *necessarily incapable of performance* within that time.' (Italics in original.) When the Legislature enacts language that has received definitive judicial construction, we presume that the Legislature was aware of the relevant judicial decisions and intended to adopt that construction. [Citation.] This presumption gains further strength when, as in this case, it is clear that the Legislature was explicitly informed of the prior construction." (*Foley*, *supra*, 47 Cal.3d at pp. 674-675, fn. omitted.)

Timed Out argues that our Supreme Court aligned itself with *Tostevin* when it decided *San Francisco Brewing Corp. v. Bowman* (1959) 52 Cal.2d 607 (*San Francisco Brewing*). In *San Francisco Brewing*, the defendant entered into an agreement with the plaintiff for exclusive rights to distribute and sell the plaintiff's products for as long as the defendant's " 'took care of the territory.' " (*Id*. at p. 611.) Later, the plaintiff sued the defendant over an open balance, and the defendant cross-complained alleging breach of the distribution agreement. (*Ibid*.) On appeal, one of the issues involved the jury instructions given by the court. The court only instructed on a part of the requested instructions on the statute of frauds, informing the jury that if it found that the parties agreed that the plaintiff would allow the defendant to be its distributor for a " 'reasonable time,' " then the jury must determine " 'what period would constitute such a reasonable time.' " (*Id*. at p. 615, italics omitted.) The *San Francisco Brewing* court found that the

9

entire instruction on the statute of frauds was appropriate, and that the jury was entitled to consider whether there was an implied agreement if the contract would endure for longer than a year, and that if so, the jury should have been instructed that the statute of frauds applies and the contract could not be enforced. (*Id*. at p. 619.)

*San Francisco Brewing* does not stand for the proposition that courts must consider whether an implied agreement regarding the duration of a contract exists when evaluating if the contract falls within the purview of the statute of frauds. In *San Francisco Brewing*, the reasonable duration of the contract was an issue of fact that was submitted to the jury. That is not the case here.

Timed Out asserts, however, that it presented sufficient evidence that an implied term of the agreement was that Next gave Bra Smyth unfettered use of Taekman's images. During her deposition, Rebecca initially claimed that the agreement with Next granted Bra Smyth the unlimited use of Taekman's images. Timed Out further insists that the indefinite duration of the contract is also apparent even if we were to accept Rebecca's testimony at trial that Bra Smyth had use of Taekman's images for as long as Bra Smyth sold the product. Timed Out opines that Bra Smyth could cease selling a product at one point then later resume sales of the product. Therefore, the contract could not conceivably be performed within a year and the supposed limitation on Bra Smyth's use of Taekman's images is merely illusory. We disagree.

Following the rationale set forth by our high court in *White Lighting* and *Foley*, either iteration of the oral agreement between Next and Bra Smyth would not come within the purview of the statute of frauds. An agreement to use Taekman's images for an indefinite duration is analogous to a contract for permanent employment that has an indefinite duration. And, courts have consistently construed permanent employment contracts as outside the statute of frauds, because they can be performed in less than a

10

year even if the job extends past a year.  (*Hejmadi v. AMFAC, Inc.* (1988) 202 Cal.App.3d 525, 541; *White Lighting*, *supra*, 68 Cal.2d at pp. 344-346.)

Lastly, Timed Out attempts to distinguish the rule set forth in *White Lighting* by arguing that the agreement contemplated there was not subject to the statute of frauds because it was terminable at will by either party.  Timed Out claims that because the agreement contemplated here was *not* terminable at will by *all* parties to the agreement, the agreement is subject to the statute of frauds.  We disagree.  The indefinite contracts contemplated in cases like *White Lighting* were found to be outside the statute of frauds because it was conceivable they could be performed within a year, not because *either* party to the contract has the power to terminate the agreement.  Like a contract for permanent employment, the usage agreement here could, conceivably, be completed within a year.  For example, Bra Smyth could cease using Taekman's images within a year under the agreement.  Therefore, the statute of frauds is inapplicable.

c. **The Statute of Frauds Does Not Necessarily Bar Admission of Evidence of the Oral Agreement**

Further, Timed Out's claims also fail for the separate and independent reason that whether the statute of frauds bars enforcement of the agreement is beside the point.  Timed Out is not seeking to invalidate or enforce the agreement between Bra Smyth and Next.  Neither is Bra Smyth.  Timed Out's complaint alleged three causes of action: statutory misappropriation of likeness, common law misappropriation of likeness, and unjust enrichment.

As previously discussed, Civil Code section 1624 provides in pertinent part: "(a) The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: [¶] (1) An agreement that by its terms is not to be performed within a year from the making thereof."

11

Generally, the rule regarding the admissibility of relevant evidence is broad. The Evidence Code provides that "[e]xcept as otherwise provided by statute, all relevant evidence is admissible." (Evid. Code, § 351.) Further, relevant evidence is widely defined as any evidence that has the tendency to prove or disprove a disputed fact. (*Id.*, § 210.) There is no statute prohibiting the admission of evidence pertaining to an oral agreement, even if it does violate the statute of frauds, if evidence of the agreement is not introduced to enforce the invalid agreement. Thus, the issue is whether the oral agreement was relevant, that is, had any tendency to prove or disprove a disputed fact at trial.

Timed Out claims in its supplemental letter brief that the evidence of the oral agreement is relevant *only* to "the existence of the purported consent agreement which can be proven solely by a writing as required by the statute of frauds." Therefore, Timed Out argues that evidence of the oral agreement was irrelevant and should have been excluded under Evidence Code section 352.

We disagree. Here, Timed Out alleged causes of action for statutory and common law misappropriation of likeness and for unjust enrichment. In order to prevail on a claim of common law misappropriation, Timed Out must prove: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." (*Eastwood v. Superior Court* (1983) 149 Cal.App.3d 409, 417, superseded by statute on other grounds as stated in *KNB Enterprises v. Matthews* (2000) 78 Cal.App.4th 362, 367, fn. 5.) Additionally, in order to prevail on a claim of statutory misappropriation under Civil Code section 3344, Timed Out must prove all the elements of the common law cause of action and must also prove that the use of the plaintiff's name or likeness was made knowingly. (*Eastwood v. Superior Court*, *supra*, at p. 417.)

12

Both of these causes of action require that Timed Out prove that Bra Smyth lacked Taekman's consent to use her images. Neither the common law cause of action nor the statutory cause of action require that consent be in writing. In fact, consent can be implied from conduct that can be reasonably interpreted as manifesting the plaintiff's consent. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 26.) Therefore, Timed Out's argument on this point contains a fundamental misconception. As opined by Bra Smyth, there is no requirement in either causes of action for misappropriation of likeness that consent be proven by the existence of a valid contract.

Timed Out asserts that evidence of an oral agreement that violates the statute of frauds cannot prove the existence of consent. However, Timed Out misconstrues the evidentiary effect of the statute of frauds. A contract that violates the statute of frauds is not automatically rendered inadmissible. "Where no attempt is made to enforce the terms of an oral contract within the statute, evidence of it may be introduced." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 346, p. 392.) The Restatement of Contracts reiterates this point, providing that "[t]he Statute of Frauds does not make an unenforceable contract inadmissible in evidence for any purpose other than its enforcement in violation of the Statute." (Rest.2d Contracts, § 143.)

For example, in *Walter H. Leimert Co. v. Woodson* (1954) 125 Cal.App.2d 186, an oral contract regarding the sale of real estate that was unenforceable under the statute of frauds was nonetheless admissible as evidence of the parties' relationship and the fiduciary duties that arose between them. (*Id.* at p. 190.) In *George v. Double-D Foods* (1984) 155 Cal.App.3d 36, certain oral promises were deemed admissible because they were relevant evidence of the reasonable value of services rendered by the plaintiff in an action in quantum meruit. (*Id.* at p. 42.) Additionally, courts have held that evidence of an oral agreement violating the statute of frauds is also admissible when a party raises a claim of estoppel. (*San Francisco Brewing*, *supra*, 52 Cal.2d at p. 619.)

13

Timed Out cites to several court cases that it argues shows that invalid agreements under the statute of frauds are inadmissible. In *Lombardo*, *supra*, 169 Cal.App.3d at page 539, the appellate court stated that " 'the statute of frauds excludes proof of certain types of agreements which are not sufficiently evidenced by a writing,' " quoting our Supreme Court's decision in *Riley v. Bear Creek Planning Committee* (1976) 17 Cal.3d 500, 509 (*Riley*). We do not agree with Timed Out's assertion that the phrase "excludes proof" as used in the aforementioned cases necessarily means that the invalid contract is inadmissible for all purposes.

Certainly, in a cause of action seeking to enforce a contract, evidence of an oral agreement violating the statute of frauds could be excluded as irrelevant, because a contract violating the statute of frauds cannot be enforced. For example, in *Lombardo*, the plaintiff sought to enforce an oral agreement devising certain property. (*Lombardo*, *supra*, 169 Cal.App.3d at pp. 536-537.) Similarly, the discussion by our Supreme Court in *Riley* did not concern the admissibility of evidence of an invalid contract under the statute of frauds. *Riley* discussed the principles of the admission of parol evidence and the statute of frauds with respect to extrinsic evidence sought to be admitted regarding an agreement entered by the plaintiffs and the defendants. (*Riley*, *supra*, 17 Cal.3d 500.) In contrast, here neither Timed Out nor Bra Smyth seek enforcement of the oral agreement.

The other cases relied on by Timed Out are also inapposite. For example, Timed Out cites to *Anderson v. Stansbury* (1952) 38 Cal.2d 707. There, the plaintiffs filed an action for a declaration of their rights under an agreement they had made with the defendants that they would retain a one-fourth interest in a property. (*Id.* at pp. 711-712.) However, the court concluded that since the alleged agreement was not in writing, it concluded that such an agreement, "if it existed," would therefore be barred by the statute of frauds and therefore objections to testimony regarding the agreement were properly sustained. (*Id.* at p. 715.) Unlike the situation contemplated in *Anderson*, there is no

14

action for declaratory relief regarding the terms of the oral agreement between Next and Bra Smyth.[2]

Timed Out argues that the statute of frauds was enacted in order to prevent fraudulent contracts and perjury. Therefore, "[t]he whole object of the statute would be frustrated if any substantive portion of the agreement could be established by parol evidence." (*Craig v. Zelian* (1902) 137 Cal. 105, 106.) We agree with Timed Out's sentiments on this point. However, the purpose of the statute of frauds is not frustrated when an oral agreement is admitted for purposes *other* than enforcement of the agreement itself. As we discussed *ante*, courts have also routinely held that such agreements are nonetheless admissible if their admission is sought for other purposes.

Again, we reiterate that Timed Out does not seek to enforce the terms of the oral agreement between Next and Bra Smyth.[3] Rather, Timed Out alleged causes of action for misappropriation of likeness for using Taekman's images. The key issue is thus whether evidence of the agreement between Next and Bra Smyth is relevant to the contested issue of whether Taekman consented to use of her images. Accordingly, even if the oral agreement did violate the statute of frauds, the trial court would not have erred in admitting the evidence if it was relevant to prove or disprove consent and was not more prejudicial than probative.

---

[2] The other cases cited to by Timed Out are distinguishable on similar grounds, because they involve situations where the excluded evidence was sought to be introduced in order to enforce the terms of the invalid agreement. *Empire Investment Co. v. Mort* (1915) 169 Cal. 732 was an action for breach of contract where the parties sought to introduce evidence of a purported oral agreement entered at the same time a written contract was executed. Our Supreme Court concluded that evidence of this oral agreement was properly excluded, because the oral agreement would have violated the statute of frauds. In *Osborne v. Endicott* (1856) 6 Cal. 149 our Supreme Court concluded that oral testimony was inadmissible because there was no written proof that the trust sought to be enforced was in writing. (*Id.* at pp. 152-153.)

[3] As we previously noted, Next is not a party to the underlying litigation.

d. **The Trial Court Did Not Abuse Its Discretion**

Based on the foregoing, we conclude that the trial court did not abuse its discretion when it denied the pretrial motion in limine.

First, the statute of frauds is inapplicable to this case, because the oral agreement is not one in which it could not have feasibly been completed within a year.

Second, even if the oral agreement was within the statute of frauds, the evidence was not admitted to enforce the agreement and was relevant to the contested issue of consent. Under California law, the element of consent or lack thereof in causes of action for statutory and common law misappropriation of likeness need not be shown by a written agreement. Consent can be proven by oral statements or by the plaintiff's conduct. (*Hill v. National Collegiate Athletic Assn.*, *supra*, 7 Cal.4th at p. 26.) At trial, Bra Smyth argued that Taekman consented to use of her images based on her testimony that Next negotiated on her behalf as her agent and that she was informed of the usage rights attached to each modeling project prior to photography shoots. Taekman also confirmed that she did not know the exact contents of the discussion that Next had with Bra Smyth. Evidence of the agreement between Next and Bra Smyth was relevant to whether Taekman consented when she accepted the modeling job and participated in the photo shoot.

Accordingly, the trial court did not err when it denied Timed Out's motion in limine. Evidence of the oral agreement was relevant to disputed issues at trial, and its admission was not more prejudicial than it was probative. (Evid. Code, §§ 210, 352.)

2. *Standing*

In its respondent's brief, Bra Smyth claims that Timed Out lacks standing to pursue this action. Bra Smyth argues that the only portion of her rights that Taekman has assigned to Timed Out is the right to recover damages for the tort of invasion of privacy, which is a personal right that is not assignable. Therefore, Bra Smyth maintains that the

16

assignment in question is not authorized under Civil Code section 3344.1, which allows for assignment of a deceased individual's right to his or her likeness.

"A lack of standing is a jurisdictional defect to an action that mandates a dismissal." (*Cummings v. Stanley* (2009) 177 Cal.App.4th 493, 501.) Therefore, "lack of standing to sue can be raised at any time, even for the first time on appeal." (*Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1604.) However, Bra Smyth's claims regarding standing have no merit.

First, Bra Smyth's reliance on Civil Code section 3344.1 is misplaced. Civil Code section 3344.1 discusses assignments of a *deceased personality's* name, voice, signature, photograph, or likeness. It does not discuss a living individual's assignment of rights. It is therefore inapplicable here.

Furthermore, our colleagues at the Second District recently addressed the issue of whether an individual's right to publicity can be assigned in *Timed Out*, *LLC v. Youabian*, *Inc.* (2014) 229 Cal.App.4th 1001 (*Timed Out*). In *Timed Out*, two models assigned the plaintiff their rights to sue for misappropriation of their images after discovering that their images were being used in advertisements for the defendant's cosmetic medical services. Thereafter, the plaintiff filed a complaint against the defendants alleging causes of action for common law and statutory misappropriation of likeness. The defendants moved for judgment on the pleadings, arguing that the plaintiff did not have standing to sue on behalf of the models because the models' privacy rights were personal and could not be assigned. (*Id*. at pp. 1004-1005.) The defendants also argued that the plaintiff was only assigned the right to bring a lawsuit for misappropriation of the models' images and had no other duties along with the assignment and was therefore unable to bring its claims. The trial court agreed with the defendants, and granted the defendants' motion and entered judgment in favor of the defendants. The plaintiff appealed. (*Id*. at p. 1005.)

17

On appeal, the Second District concluded that a cause of action for misappropriation of likeness was assignable. (*Timed Out*, *supra*, 229 Cal.App.4th at pp. 1009-1010.) Civil Code section 954 provides that "[a] thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner." Since the plaintiff only sought to recover pecuniary damages from the defendants' alleged commercial misappropriation of the models' likeness, Civil Code section 954 applied and the right could be transferred. (*Timed Out*, *supra*, at pp. 1010-1011.) The appellate court also rejected the defendants' alternative argument that the plaintiff could not bring its lawsuit because it only possessed a right to sue for particular violations and was not assigned an exclusive license to assert its claims. (*Id*. at p. 1011.)

Like the models in *Timed Out*, Taekman assigned Timed Out all of her rights, title, and interest in her images that may have been illegally infringed on, including the right to sue, counterclaim, and recover for damages from past, present, and future infringement. We agree with the rationale set forth in *Timed Out* and conclude that these rights are assignable. (*Timed Out*, *supra*, 229 Cal.App.4th at pp. 1005-1008.)

Accordingly, Timed Out had standing to bring a cause of action for misappropriation of likeness. However, as we explained above, Timed Out's arguments on appeal have no merit. We therefore affirm the judgment.

### DISPOSITION

The judgment is affirmed. Bra Smyth of California is entitled to its costs on appeal.

18

_____
Premo, J.

WE CONCUR:


_____
Rushing, P.J.



_____
Elia, J.